FOURTH DIVISION
December 2, 2010

1-09-1667

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | 08 CR 16364 |
| | ) | |
| OMAR WILLIAMS | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Kenneth J. Wadas, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant Omar Williams was convicted in a bench trial of two counts of unlawful use of a weapon by a felon and six counts of aggravated unlawful use of a weapon (AUUW). At sentencing, all counts were merged into one AUUW conviction and defendant was sentenced to 5 years in prison, with 308 days' credit for the time he served awaiting trial. Defendant was also assessed costs totaling $715. On appeal defendant challenges the constitutionality of the criminal laws of which he was convicted as violative of the second amendment to the United States Constitution. He also challenges some of the costs assessed. We affirm defendant's conviction and sentence, but modify the costs.

I. BACKGROUND

Defendant does not challenge the sufficiency of the evidence of his guilt, aside from his constitutional challenges. The State's evidence at trial established that on August 14, 2008, at about

5 p.m. the victim, Robert Brown, was walking and conversing with a friend in the area of 1324 West 13th Street in Chicago. Defendant, whom Brown had known for about 10 years, ran up behind Brown and struck him in the face with a silver-gray 9-millimeter handgun. Defendant then took $30 from Brown's pants pocket. Brown walked to his grandmother's house, where he cleaned himself off, and then rode his bike to the hospital. Brown subsequently identified defendant as his assailant in a lineup and also identified him at trial. Defendant was arrested on the street later that same day. On his person the police found a chrome 9-millimeter semiautomatic handgun loaded with nine bullets. They also recovered from defendant one $100 bill, one $10 bill, and two $1 bills. The prosecution introduced evidence that defendant had previously been convicted of unlawful use of a weapon by a felon. Because the money found on defendant did not match the $30 he allegedly took at gunpoint from Brown and no part of the bills recovered could add up to $30, the trial judge acquitted defendant of the offense of robbery, with which he was also charged. But the trial judge did convict him of six counts of aggravated unlawful use of a weapon and two counts of unlawful use of a weapon by a felon. Those charges were merged into one count of aggravated unlawful use of a weapon, defendant was sentenced to five years in prison, and a number of costs were assessed. This timely appeal then ensued.

## II. ANALYSIS

The second amendment to the United States Constitution provides:

> "A well regulated Militia, being necessary to the security
>
> of a free State, the right of the people to keep and bear
>
> Arms, shall not be infringed." U.S. Const., amend. II.

We need not discuss defendant's contention that the second amendment is incorporated in the due

process clause of the fourteenth amendment and therefore applies to individual states, including Illinois. This proposition was answered affirmatively in McDonald v. City of Chicago, 561 U.S. ___, ___, 177 L. Ed. 2d 894, 922, 130 S. Ct. 3020, 3044 (2010). Nor need we reexamine the case of Kalodimos v. Village of Morton Grove, 103 Ill. 2d 483 (1984), as defendant suggests we should in light of McDonald. Kalodimos held that a village ordinance prohibiting, with a few exceptions, the possession of operable handguns was a correct exercise of police power and was not in violation of the Illinois constitutional provision which provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. Any reexamination of Kalodimos would be the task of the Illinois Supreme Court. Moreover, in light of the application of the second amendment to the states by McDonald, there is no need to resort to constructions of the Illinois Constitution's provision applicable to the right to bear arms. Nor does defendant attempt to explain how such an application would be helpful to his arguments, given the extraordinary deference to the police power which this provision grants. Kalodimos, 103 Ill. 2d at 491-92.

Defendant's central contention is that the recent cases of District of Columbia v. Heller, 554 U.S. 570, ___, 171 L. Ed. 2d 637, 661-62, 677, 128 S. Ct. 2783, 2801-02, 2815-16 (2008), and McDonald, which applied the second amendment to invalidate laws virtually banning any possession of loaded handguns for self-defense in the home, should be extended to invalidate the statutes of which defendant was convicted, which criminalized his possession of a loaded handgun outside of his home. This court has recently explored this very issue and definitively determined that the holdings of the United States Supreme Court in Heller and McDonald do not establish that the Illinois statute on aggravated unlawful use of a weapon is unconstitutional. People v. Dawson, 403 Ill. App. 3d 499, 506,

934 N.E.2d 598, 607 (2010).  We find Dawson to be persuasive and so reject defendant's challenges to the AUUW statute as well as the statute criminalizing the unlawful use of a weapon by a felon, the two statues of which he was convicted in eight different permutations.

This challenge to the constitutionality of a statute is subject to *de novo* review.  Davis v. Brown, 221 Ill. 2d 435, 443 (2006).  Moreover, as we stated in Dawson:

> "We begin review of such an argument with the presumption that the statute is constitutional. \*\*\* It is our duty, when it may be reasonably done, to construe a challenged statute in a manner that upholds its validity and constitutionality. [Citation.]" Dawson, ___ Ill. App. 3d at 506, 934 N.E.2d at 603-04.

Upon close review of the arguments presented by defendant, it becomes clear that he overstates the holdings of Heller and McDonald in order to make them appear to control the outcome of the present challenge.  Thus defendant notes that Heller found that a handgun, the type of firearm at issue there and in the case before us, was one contemplated for protection by the drafters of the second amendment, because it was commonly in use at the time and not particularly dangerous or unusual as a firearm.  But it is clear that Heller found this a necessary but not sufficient quality of those weapons which were protected.  Heller also noted that a crucial factor in permitting the criminalization of such weapons might not be just their type but their location, such as possessing them in schools and government buildings.  Heller, 554 U.S. at ___, 171 L. Ed. 2d at 678, 128 S. Ct. at 2817.  Thus the very handgun which would be legal to possess in one's home could be illegal to possess in a school or library.

Defendant attempts to turn this reasoning on its head by concluding that Heller's citation of "sensitive" places where firearms could be banned outside the home necessarily meant that they could not be banned everywhere outside the home. There are two answers to this. One is that the Illinois statute does permit firearms to be possessed outside the home under certain circumstances if they are not "uncased, loaded and immediately accessible." 720 ILCS 5/24-1.6(a)(1),(a)(3)(A) (West 2008). More importantly, both Heller and McDonald made clear that the only type of firearms possession they were declaring to be protected under the second amendment was the right to possess handguns in the home for self-defense purposes. Heller, 554 U.S. at ___, 171 L. Ed. 2d at 661-62, 677, 128 S. Ct. at 2801-02, 2815-16; McDonald, 561 U.S. at ____, 177 L. Ed. 2d at 929, 130 S. Ct. at 3050 (extending this protection, under the due process clause, to infringement by state statutes). It is this narrow focus which defeats a final argument made by defendant, that Heller defined the right to "bear arms" as the right to carry a weapon on one's person or clothing in order to be armed and ready for offensive or defensive action. Heller, 554 U.S. at ___, 171 L. Ed. 2d at 652-53, 128 S. Ct. at 2793. But again, this was in the context of the right to bear arms for protection in one's home, and the holdings do not extend beyond such usage.

Along with the narrow holdings of Heller and McDonald, we must acknowledge the numerous Illinois cases predating those two decisions which have found the Illinois statute on unlawful use of weapons to be constitutional and a rational expression of public policy in the face of due process challenges. People v. Sole, 357 Ill. App. 3d 988, 991 (2005); People v. Austin, 349 Ill. App. 3d 766, 772 (2004); People v. Pulley, 345 Ill. App. 3d 916, 925 (2004); People v. Marin, 342 Ill. App. 3d 716, 729 (2003); People v. Grant, 339 Ill. App. 3d 792, 802-03 (2003). As we held in Austin:

1-09-1667

> "[T]he [AUUW] statute reflects a rational relationship to its intended
> purpose to impose greater punishment for conduct that creates
> 'inherent danger to police officers and the general public, even
> if the person carrying the weapon has no criminal objective.'" Austin,
> 349 Ill. App. 3d at 772, quoting Pulley, 345 Ill. App. 3d at 925, citing
> Grant, 339 Ill. App. 3d at 806.

These courts applied a rational basis test in determining the constitutionality of the AUUW statute because they found that no fundamental right was at issue. Like the court in Dawson, we find that no fundamental right is implicated here, even in light of the holdings of Heller and McDonald. As we stated in Dawson:

> "[I]t is essential to the resolution of this issue to understand that the
> Heller Court ultimately limited its holding to the question presented
> – that the second amendment right to bear arms protected the right
> to possess a commonly used firearm, a handgun, in the home for self-
> defense purposes. Heller, 554 U.S. at ___, 171 L. Ed. 2d at 661-62,
> 677, 128 S. Ct. at 2801-02, 2815-16, McDonald also addressed
> the limited question of whether a ban on the possession of a handgun
> in the home violated the second amendment right to bear arms. The
> holding in McDonald was similarly constrained with a plurality of the
> Court concluding that the right to possess a handgun in the home for
> self-defense was fundamental and incorporated under the due process

6

clause. <u>McDonald</u>, 561 U.S. at ___, 177 L. Ed. 2d
at 929, 130 S. Ct. at 3050,." <u>Dawson</u>, ___ Ill. App. 3d
at ___, 934 N.E.2d at 605.

For this reason, the <u>Heller</u> court expressly determined not to apply any particular level of constitutional scrutiny, declaring that although rational basis scrutiny would be too low (<u>Heller</u>, 554 U.S. at ___ n.27, 171 L. Ed. 2d at 679 n.27, 128 S. Ct. at 2817 n.27), under any of the traditional heightened levels of scrutiny, banning the possession of handguns in the home for self-protection would be unconstitutional (<u>Heller</u>, 554 U.S. at ___, 171 L. Ed. 2d at 679, 128 S. Ct. at 2817-18).

But the AUUW statute does not implicate the fundamental right announced by <u>Heller</u> and extended to the states under the due process clause by <u>McDonald</u>, the right to possess a loaded handgun in the home for self-protection. For this reason, we adhere to the cases we have cited, such as <u>Austin</u> and <u>Pulley</u>, which found that there was a rational basis to the AUUW statute's ban on carrying and possessing loaded firearms outside of the home, that is, the protection of police officers and the general public. Accordingly, we agree with and adopt the holding of <u>Dawson</u>, 403 Ill. App. 3d at 510, 934 N.E.2d at 607, that this Illinois statute limiting the right of citizens to carry, outside of their homes and on their persons or in their vehicles, loaded and accessible firearms does not violate the second amendment.

Defendant was 19 years old when he was arrested in possession of a loaded handgun. He presents an alternative argument, necessarily premised on a finding by us that under the second amendment adults have a constitutional right to possess loaded handguns outside of their homes. Defendant contends that his youth should not prevent the application of such a holding to him and

therefore the statute under which he was convicted is unconstitutional because it specifically prohibits the possession of handguns outside the home by anyone under the age of 21. 720 ILCS 5/24 -1.6(a)(3)(I) (West 2008). Defendant presents a number of arguments for why those between the ages of 18 and 20 should be treated similarly to adults. But we have determined that the State may constitutionally ban the possession of loaded handguns by adults outside their homes. Defendant has failed to present any reason supporting a different result for those under the age of 21 and therefore his challenge must fail.

Defendant asserts that the holdings of Heller and McDonald also render unconstitutional the statute under which he was convicted for unlawful use of a weapon and possession of ammunition by a felon. 720 ILCS 5/24 -1.1(a) (West 2008). But the courts in Heller and McDonald made clear that no such result was intended:

> "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill ***." Heller, 554 U.S. at ___, 171 L. Ed. 2d at 678, 128 S. Ct. at 2816-17.

McDonald was even stronger in its defense of these traditional prohibitions:

> "We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill' ***. We repeat these assurances here. Despite municipal respondents' doomsday proclamations,

1-09-1667

incorporation does not imperil every law regulating firearms." McDonald, 561 U.S. at ___, 177 L. Ed. 2d at 926, 130 S. Ct. at 3047.

Even if this language is construed as *dictum*, subsequent courts have determined that under an intermediate level of scrutiny, laws prohibiting the possession of firearms by felons or by repeat sexual offenders would withstand constitutional scrutiny. United States v. Williams, 616 F.3d 685, 694 (7th Cir. 2010) (where defendant had been convicted of a violent felony, no merit to his claim that a statute banning possession of firearms by convicted felons infringed upon his constitutional right to possess a firearm); United States v. Skoien, 614 F.3d 638, 645 (7th Cir. 2010) (statute banning possession of firearms by persons convicted of at least two misdemeanor crimes of domestic violence was constitutional). We agree that under any appropriate level of scrutiny, the second amendment was not intended to permit a convicted felon to possess, on his person, a loaded handgun. We also note that defendant was found to be in possession of this handgun and ammunition while standing on a public street, thus negating any possible application of the holding of Heller and McDonald concerning possession of handguns in the home. Because the statute applies to the situation in which defendant found himself, being in a public place with a handgun, he cannot argue for relief based on the possibility that the statute might be unconstitutional as applied to a felon in possession of a handgun in his own home. United States v. Salerno, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707- 08, 107 S. Ct. 2095, 2100 (1987).

On the question of costs, the defendant contends, and the State correctly concedes, that it was improper to assess the defendant a $5 court system fee (55 ILCS 5/5 -1101(a) (West 2008)), a $25

9

court supervision fee (625 ILCS 5/16 -104c (West 2008)) and a $20 serious traffic violation fee (625 ILCS 5/16 -104d (West 2008)) because all of these fees can only be imposed upon conviction or placement on supervision for either a violation of the Illinois Vehicle Code (625 ILCS 5/11- 501 (West 2008)), a municipal ordinance or a serious traffic violation. Defendant was not convicted of any of these offenses and therefore these fees must be vacated.

Defendant also challenges the assessment of a court services fee of $25, contending that the statute limits assessment to convictions pursuant to certain designated statutes, which do not include the statutes of which he was convicted. Defendant misreads the court services fee statute which provides in pertinent part:

> "In criminal, local ordinance, county ordinance, traffic and
>
> conservation cases, [the court services fee] shall be
>
> assessed against the defendant upon a plea of guilty,
>
> stipulation of facts or findings of guilty, resulting in a
>
> judgment of conviction *** or order of supervision, or
>
> sentence of probation without entry of judgment pursuant
>
> to [certain enumerated criminal statutes]." 55 ILCS
>
> 5/5 -1103 (West 2008).

It is clear that the statute permits assessment of this fee upon any judgment of conviction but also permits such assessment for orders of supervision or probation, made without entry of a judgment of conviction, for certain limited and enumerated criminal provisions. Judgments of conviction were entered for defendant, and the fact that these convictions were not among those

enumerated by the statute for imposition of this fee without entry of conviction does not void the assessment.

We must next consider whether certain designated "fees" assessed against the defendant were in fact "fines" for which he is entitled to presentence incarceration credit of $5 a day. 725 ILCS 5/110 -14(a) (West 2008). As was stated in People v. Jones, 223 Ill. 2d 569, 582 (2006):

> "Broadly speaking, a 'fine' is a part of the punishment for the
> conviction, whereas a 'fee' or 'cost' seeks to recoup expenses
> incurred by the State – to 'compensate' the State for some
> expenditure incurred in prosecuting the defendant."

Thus, despite the statutory label, a "fee" which is not intended to specifically reimburse the State for costs it has incurred in prosecuting a defendant is actually a "fine." Jones, 223 Ill. 2d at 581. Here defendant was assessed a $10 mental health "fee" to be placed in a general fund to finance the mental health court (55 ILCS 5/5 - 1101(d -5) (West 2008)); a $5 youth diversion/peer court "fee" to help fund the court of that name (55 ILCS 5/5 -1101(e) (West 2008)); a $30 Children's Advocacy Center "fee" to help fund that body (55 ILCS 5/5 -1101(f -5) (West 2008)); and a $5 drug court "fee" to help fund that court (55 ILCS 5/5 - 1101(f) (West 2008)). None of these charges were designed to reimburse the State for money it expended in prosecuting this defendant; accordingly, they are all "fines" for which presentence incarceration credit of $5 per day is authorized. These charges total $50 and defendant is entitled to that amount in credit from his presentence incarceration credit.

We are not persuaded by defendant's claim that he should be entitled to similar credit for the $200 "fee" imposed upon him for mandatory DNA testing which was ordered upon his conviction. We

agree with People v. Tolliver, 363 Ill. App. 3d 94, 97 (2006), which held that this is a charge intended to compensate the State in part for the cost of obtaining DNA analysis for convicted defendants. It is not subject to the preincarceration credit. *Contra*, People v. Long, 398 Ill. App. 3d 1028, 1034 (2010); People v. Clark, No. 2 - 08-0993, slip op. at 2-3 (September 16, 2010).

Defendant also contends that because the State has previously obtained a DNA sample from him pursuant to a prior conviction, a second charge cannot be assessed against him because the applicable statute "only contemplates the imposition of a single charge." He relies upon People v. Evangelista, 393 Ill. App. 3d 395, 399 (2009), which found that after a DNA sample had been collected once from a defendant, collection of additional samples would "serve no purpose" and therefore no second fee was authorized. Accord People v. Willis, 402 Ill. App. 3d 47, 61 (2010). We are persuaded by a recent line of cases which has taken issue with the logic of Evangelista. Those cases note that the statute does not limit the number of fees which can be assessed. They also note that a new sample may be required as more sophisticated DNA tests are developed. Finally they noted that the statute provides for the removal of a defendant's DNA from the sample database under certain conditions, which would necessitate taking a second sample should a defendant then be convicted of a another felony, therefore implicitly supporting imposition of a second analysis fee. People v. Hubbard, No. 1 - 09-0346, slip op. at 4-5 (September 17, 2010); People v. Marshall, 402 Ill. App. 3d 1080, 1083 (2010), *appeal allowed*, No. 110765; People v. Grayer, No. 1 - 09 - 0021, slip op. at 7 (August 24, 2010). This analysis strongly argues against defendant's underlying claim, that a second DNA test would be an exercise in futility and therefore no fee can be assessed for it. Accordingly, we affirm the imposition of the $200 DNA analysis fee.

## III. CONCLUSION

For the reasons set forth in this opinion, we affirm defendant's conviction and sentence but remand for modification of the mittimus in accord with our determination that certain costs should not have been assessed and others should receive a credit for the time defendant spent in custody awaiting trial.

Affirmed in part and vacated in part; cause remanded with directions.

O'BRIEN and LAVIN, JJ., concur.