# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Robinson*, **2011 IL App (1st) 100078**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BERNARD ROBINSON, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-0078 |
| Filed | December 30, 2011 |
| Rehearing denied | April 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for unlawful use of a weapon by a felon, the appellate court rejected defendant's contention that the statute infringed on his constitutional right to bear arms to the extent that it prohibited him from keeping a firearm in his home for self-defense, since the statute is a constitutionally permissible restriction of the second amendment right to bear arms, it serves a substantial governmental interest, and it is proportional to the interest served. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-03878; the Hon. Joseph M. Claps, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Deborah Nall, all of State
Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John
E. Nowak, and Clare Wesolik Connolly, Assistant State's Attorneys, of
counsel), for the People.

Panel

JUSTICE HOWSE delivered the judgment of the court, with opinion.

Presiding Justice Epstein and Justice J. Gordon concurred in the
judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Bernard Robinson was convicted of unlawful use of
a weapon by a felon (UUW) (720 ILCS 5/24-1.1(a) (West 2008)). He was sentenced to 5½
years' imprisonment. On appeal, defendant contends the UUW statute unconstitutionally
infringes on his right to bear arms, in violation of the second amendment to the United States
Constitution. For the reasons that follow, we affirm defendant's conviction and sentence.

¶ 2                               BACKGROUND

¶ 3    Defendant does not challenge the sufficiency of the evidence presented against him. The
record reflects that at around 9 a.m. on January 28, 2009, several Chicago police officers
executed a search warrant on the first-floor front apartment at 4818 South Hermitage. After
announcing their presence and waiting 5 to 10 seconds for a response, the officers forced
entry into the apartment. Chicago police officer Edmond Daly testified he saw Mickey
Robinson standing near the back of the apartment. When Officer Daly ran after Robinson,
Officer Daly saw Robinson drop a small object from his hand near the back bedroom. Officer
Daly recovered the object and noticed it was a bag of suspected crack cocaine.

¶ 4    Chicago police officer Martinez testified he was the second officer to enter the apartment.
He saw defendant standing in the front living room and detained him. After everyone in the
apartment was detained, Officer Martinez called for a canine unit to search the apartment.
After a police canine dog gave a positive indication for the presence of narcotics in a metal
file cabinet in the living room, Officer Martinez searched the cabinet and found clothing,
money and suspected cocaine inside a jacket pocket.

¶ 5    After being advised of his *Miranda* rights, defendant told the officers he had one gun.
When asked about the items in the cabinet, defendant told the officers "That is my stuff." A
search of the apartment recovered a gun from the stove in the kitchen of the apartment.

¶ 6    The parties stipulated that a .38-caliber bluesteel revolver was found by police in the

stove in the kitchen of the apartment and that a box containing 50 live rounds of .32-caliber ammunition was recovered from a kitchen cabinet. It was also stipulated that if called to testify, Chicago police officer Kalafut would say he found three utility bills in the apartment that listed defendant's name with the address of the apartment on them. The final stipulation was that Penny Evans, a forensic scientist at the Illinois State Police crime lab, would testify the substance recovered from the file cabinet tested positive for 123 grams of cocaine.

¶ 7 The trial court found defendant guilty of unlawful use of a weapon by a felon for possessing a handgun, but not guilty of possession of a controlled substance and not guilty of unlawful use of a weapon by a felon for possessing ammunition. Defendant was sentenced to 5½ years' imprisonment, with 324 days' credit for time served. Defendant appeals.

¶ 8                                                ANALYSIS
¶ 9                          I. Constitutionality of the UUW Statute

¶ 10 Defendant contends we should declare the unlawful use of a weapon by a felon statute unconstitutional and vacate his conviction under that statute, because it violates his right to bear arms as embodied by the second amendment to the United States Constitution.

¶ 11 Although defendant recognizes we have previously found both the aggravated unlawful use of a weapon by a felon (AUUW) statute and the unlawful use of a weapon by a felon statute constitutional in contexts where a defendant has been convicted of possession of a weapon outside the confines of his home (see, *e.g.*, *People v. Davis*, 408 Ill. App. 3d 747 (2011); *People v. Dawson*, 403 Ill. App. 3d 499 (2010)), defendant correctly notes we have not specifically addressed the constitutionality of the UUW statute in the context where a defendant is convicted of possession of a weapon recovered from inside his home.

¶ 12 Although defendant did not challenge the statute's constitutionality in the trial court, a constitutional challenge to a statute may be raised at any time. *People v. Ross*, 407 Ill. App. 3d 931, 938 (2011). We review a statute's constitutionality *de novo. Ross*, 407 Ill. App. 3d at 938 (citing *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009)).

¶ 13 The second amendment provides:

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 14 Defendant contends the second amendment is intended to protect an individual's "inherent" natural right to keep a firearm in his home for self-defense, citing *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010), and *District of Columbia v. Heller*, 554 U.S. 570, 598-99 (2008). In light of *Heller* and *McDonald,* defendant contends the UUW criminal statute is facially unconstitutional under the second amendment. Defendant also contends the UUW statute is unconstitutional as applied to him under the specific facts of this case because it criminalized defendant's otherwise lawful conduct.

¶ 15 In *Heller*, the Supreme Court struck down a District of Columbia ordinance that "totally ban[ned] handgun possession in the home. It also require[d] that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." *Heller*, 554 U.S. at 628.

¶ 16    In *McDonald*, the Supreme Court struck down a Chicago ordinance prohibiting the possession of any handgun within the city, unless the handgun had a trigger lock, a load indicator, and had been registered by the owner prior to March 30, 1982. The Supreme Court recognized the right to possess a handgun in the home for the purpose of self-defense is protected by the second amendment as fundamental, as noted in *Heller*. The *McDonald* Court went on to hold that the due process clause of the fourteenth amendment incorporates the second amendment right as recognized by *Heller*. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3050.

¶ 17    With those holdings in mind, we first examine whether the UUW statute is constitutional on its face. Our analysis begins with the presumption that the statute is constitutional and that a party challenging the statute has the burden of rebutting that presumption. *Ross*, 407 Ill. App. 3d at 939; *Dawson*, 403 Ill. App. 3d at 506. "It is our duty, when it may be reasonably done, to construe a challenged statute in a manner that upholds its validity and constitutionality." *Dawson*, 403 Ill. App. 3d at 506 (citing *People v. Jones*, 223 Ill. 2d 569, 596 (2006)). Moreover, we note the legislature enjoys wide latitude in prescribing criminal penalties under its police power and has an obligation to protect its citizens from known criminals. *Ross*, 407 Ill. App. 3d at 939.

¶ 18    This district has been somewhat divided regarding what standard of constitutional review should apply to second amendment challenges to criminal statutes. In both *Dawson*, 403 Ill. App. 3d at 508, and *People v. Wilson*, 405 Ill. App. 3d 958, 962 (2010), this court held a rational basis test applied in determining the constitutionality of the AUUW statute because we found no fundamental right was impacted, even in light of *Heller* and *McDonald*. In *Ross*, 407 Ill. App. 3d at 939, and *People v. Aguilar*, 408 Ill. App. 3d 136, 146 (2011), by contrast, this court applied the intermediate scrutiny standard in upholding the constitutionality of the AUUW statute. For the same reasons outlined in detail in *Ross*, we find the intermediate scrutiny standard to be the appropriate standard in the present case. See *Ross*, 407 Ill. App. 3d at 939 (citing cases).

¶ 19    Illinois's UUW statute prohibits the possession of a firearm by any person previously convicted of any felony. 720 ILCS 5/24-1.1(a) (West 2008). Courts have noted the statute's intent is to protect the public from the danger posed by convicted felons possessing firearms. *Davis*, 408 Ill. App. 3d at 750 (citing *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986)).

¶ 20    Although the AUUW statute makes clear its proscriptions do not apply to a person "when on his or her land or in his or her abode or fixed place of business" (720 ILCS 5/24-1.6(a)(1) (West 2008)), the UUW statute's proscriptions apply to any previously convicted felon who "knowingly possess[es] on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or firearm ammunition" (720 ILCS 5/24-1.1(a) (West 2008)). Defendant suggests the UUW statute's proscription against allowing a felon to possess a weapon within his own home runs afoul of the protections afforded to an individual's right to bear arms under the second amendment, as outlined in *Heller* and *McDonald*.

¶ 21    In *Heller*, the Supreme Court limited its holding to the exact question presented–that the second amendment right to bear arms protected the right to possess a commonly used

-4-

firearm, a handgun, in the home for self-defense purposes. *Heller*, 554 U.S. at 598-601; *Williams*, 405 Ill. App. 3d at 962-63. The holding in *McDonald* was similarly constrained, with a plurality of the Court concluding that the right to possess a handgun in the home for self-defense was fundamental and incorporated under the due process clause. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3040.

¶ 22 However, the *Heller* Court went on to note that certain classes of people may be disqualified from the exercise of second amendment rights. *Heller*, 554 U.S. at 635 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home."). For example, the Court explicitly noted "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626.

¶ 23 Likewise, *McDonald* noted that federal and state legislatures and local governments have police powers to pass laws that promote the health, safety and general welfare of their citizens, and that the police power includes the power to regulate certain aspects of gun possession and ownership. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047; *Ross*, 407 Ill. App. 3d at 942. With regards to a felon's possession of a firearm, the Supreme Court recognized:

" 'We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." [*Heller*, 554 U.S. at 646.] We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.' " (Emphasis omitted.) *Id*.

¶ 24 As this court noted in *Ross*, "[o]ur United States Supreme Court has never indicated" the second amendment allows a felon "to possess a firearm *in a home* or outside of a home." (Emphasis added.) *Ross*, 407 Ill. App. 3d at 939.

¶ 25 Notwithstanding, defendant contends the Court's statements in *Heller* and *McDonald* regarding possession of a weapon by a felon amounted to *dicta* and should not apply here. But, as our supreme court explained in *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993), judicial *dicta* should usually carry dispositive weight in an inferior court. *People v. Williams*, 204 Ill. 2d 191, 206 (2003); *Davis*, 408 Ill. App. 3d at 750.

¶ 26 Because the UUW statute constitutes a valid exercise of the government's right to protect the health, safety and general welfare of its citizens, we find the UUW criminal statute is a constitutionally permissible restriction of the second amendment right to bear arms. The restriction serves a substantial governmental interest and is proportional to the interest served. See *Davis*, 408 Ill. App. 3d at 750; *Ross*, 407 Ill. App. 3d at 942. We find the mere fact that the handgun defendant possessed in this case was recovered from inside his own home does not warrant departing from our previous decisions finding the AUUW and UUW criminal statutes constitutional. Nothing in *Heller* or *McDonald* stands directly against such a finding.

¶ 27 Our conclusion is further supported by the decisions reached in several other jurisdictions that have specifically addressed this issue post *Heller* and *McDonald*. See, *e.g.*, *United States v. Torres-Rosario*, 658 F.3d 110, 112-13 (1st Cir. 2011) ("All of the circuits to face the issue post *Heller* have rejected blanket challenges to felon in possession laws."); *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) ("statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people. [Defendant], by virtue of his felony conviction, falls within such class. Therefore, the fact that Rozier may have possessed the handgun for purposes of self-defense (in his home), is irrelevant.").

¶ 28 Accordingly, we find the UUW statute does not, on its face, violate the second amendment. See *Davis*, 408 Ill. App. 3d at 750; *Ross*, 407 Ill. App. 3d at 942.

¶ 29 Defendant separately challenges the constitutionality of the UUW criminal statute as applied to him. Specifically, defendant contends his conviction under the statute was unconstitutional because the State adduced no evidence to suggest he possessed the handgun, which was recovered from his home, for an unlawful purpose. Defendant contends the State cannot criminalize otherwise lawful conduct protected at the core of an enumerated right. See *De Jonge v. Oregon*, 299 U.S. 353, 364-65 (1937).

¶ 30 The UUW statute did not require the State to show any improper purpose for the felon's possession of a firearm. 720 ILCS 5/24-1.1(a) (West 2008); *Davis*, 408 Ill. App. 3d at 750. Moreover, the evidence ultimately presented at trial did not concretely suggest that defendant, at the time the police searched his house and recovered the handgun from under the stove in his kitchen, was merely using the weapon for the self-defense of his home or another "lawful" purpose.

¶ 31 Again, we note the legislature enjoys wide latitude in prescribing criminal penalties under its police power and has an obligation to protect its citizens from known criminals. *Ross*, 407 Ill. App. 3d at 939. Defendant's recent prior felony conviction for possession of a controlled substance clearly placed him within the purview of the UUW statute. Accordingly, we find the State did not violate the second amendment when it enforced the UUW statute and applied it to defendant's acts in this case. See *Davis*, 408 Ill. App. 3d at 751.

¶ 32                              II. *Kalodimos v. Village of Morton Grove*

¶ 33 Defendant also contends that, in light of *Heller* and *McDonald*, we should reexamine our supreme court's decision in *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483 (1984).

¶ 34 In *Kalodimos*, our supreme court applied the rational basis test and upheld a city ordinance absolutely prohibiting the possession of handguns. *Kalodimos*, 103 Ill. 2d at 498.

¶ 35 In *Aguilar*, the defendant contended that the holdings in *Heller* and *McDonald* make it clear that the Illinois Constitution must be read in a manner that allows the people of Illinois the right to possess firearms for self-defense. *Aguilar*, 408 Ill. App. 3d at 149. While this court agreed with the defendant that in light of the holdings in *Heller* and *McDonald*, *Kalodimos's* interpretation of section 22 of article I of the Illinois Constitution appeared to provide less protection than the second amendment does, the court recognized "only our supreme court may change its holding: 'The appellate court lacks authority to overrule

decisions of this court, which are binding on all lower courts.' " *Aguilar*, 408 Ill. App. 3d at 149-50 (quoting *People v. Artis*, 232 Ill. 2d 156, 164 (2009)). Accordingly, the *Aguilar* court declined the defendant's invitation to "revisit" *Kalodimos*. *Id*. We see no reason to depart from *Aguilar* in this case.

¶ 36                                     CONCLUSION
¶ 37          We affirm defendant's conviction and sentence.

¶ 38          Affirmed.