# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Spencer*, 2012 IL App (1st) 102094

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRENCE SPENCER, Defendant-Appellant. |
| District & No. | First District, First Division <br> Docket No. 1-10-2094 |
| Filed | February 6, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful use of a weapon was upheld over his contentions that the State failed to present sufficient evidence to prove his guilt beyond a reasonable doubt where the evidence, viewed in the light most favorable to the prosecution, coupled with the reasonable inferences drawn therefrom, warranted the conclusion that a rational trier of fact could have found defendant constructively possessed the revolver and ammunition discovered in a search of defendant's residence and that the State had proven the essential elements of unlawful possession of a weapon by a felon beyond a reasonable doubt, and, furthermore, the appellate court rejected defendant's argument that the statute under which he was convicted unconstitutionally infringed on the second amendment right to bear arms. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-06736; the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

DePaul University College of Law, of Chicago (Patrick F. Cassidy, of counsel), for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Anne L. Magats, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Justices Karnezis and Rochford concurred in the judgment and opinion.

## OPINION

¶ 1      Following a bench trial, the defendant, Terrence Spencer, was convicted of unlawful use of a weapon (720 ILCS 5/24-1.1 (West 2008)) and sentenced to serve three years in the Illinois Department of Corrections, with a recommendation for boot camp. On appeal, the defendant challenges his conviction, asserting that (1) the State failed to present sufficient evidence to prove his guilt beyond a reasonable doubt, and (2) the statute under which he was convicted is unconstitutional because it infringes on the right to bear arms as guaranteed by the second amendment. For the reasons that follow, we affirm.

¶ 2      At trial, the State called Chicago police officer James Green, who testified that, at approximately 10 p.m. on March 21, 2009, he executed a warrant authorizing a search of the defendant and of the premises located at 2101 South 12th Avenue in Maywood, Illinois. Officer Green stated that he was accompanied by about 16 other officers, some of whom went with him to the front door of the single-family house, while others proceeded to the backyard. According to Officer Green, the officers knocked on the front door and announced their office, but no one answered. After waiting an appropriate amount of time, they forced entry through the front door, which opened into a living room. Beyond the living room was a bedroom, a second bedroom, a bathroom, a third bedroom, a kitchen, and a rear door that led out to the backyard. In addition, there was a basement in the residence that contained a single bedroom.

¶ 3      Officer Green testified that, when he and his fellow officers entered the house, he saw the defendant and several other individuals in the living room, but the defendant immediately ran toward the kitchen and the rear of the house. Officer Green stated that he pursued the defendant as he fled from the house. When the defendant got to the backyard, he was detained by Officer Kuri, who was standing outside with the defendant's mother. Officer Green testified that he went out to the backyard and heard the defendant make a statement indicating that the police "were going to find nothing but money." The officers then took the defendant and his mother back into the house.

¶ 4        Officer Green further stated that, after a canine unit had completed a search of the premises, he began his own systematic search of the house. In the third bedroom, he found a bed, a dresser, and a closet containing men's clothes. Lying on the top of the dresser were three live rounds of .357-caliber ammunition, several bundles of cash totaling $9,286, and a plastic bag containing a substance that he suspected was cannabis. Another officer recovered several other items indicating that the defendant lived in the house. Those items consisted of (1) a December 29, 2008, letter from the circuit court of Cook County probation department, which was addressed to the defendant at that house, (2) the defendant's Illinois identification card bearing the same address, (3) two photographs depicting the defendant and other men, and (4) a set of keys that opened the outer doors of the house. The probation department letter was recovered from the closet, and the identification card, keys, and photographs were recovered from the "closet area." Officer Green testified that, when these items were discovered, he returned to the living room, placed the defendant in custody, and advised him of his *Miranda* rights. According to Officer Green, the defendant indicated that he understood each of his rights and then made a statement to the effect that "if you had my kind of money, you'd have a gun, too."

¶ 5        Officer Green further testified that he and some of his team members then proceeded to search the kitchen. Officer Lipsey knelt on the kitchen counter and reached up to the top of a kitchen cabinet, where she discovered a loaded bluesteel .357-caliber revolver containing 6 live rounds, a black holster, and a plastic bag containing 14 rounds of 7.62-caliber ammunition and 2 rounds of .357-caliber ammunition. The officers then searched the first bedroom near the front of the house, where Officer Kuri recovered approximately $14,020 from a small metal box on the nightstand. Finally, Officer Kuri performed a custodial search of the defendant and recovered $525. Officer Green further testified that he created contact cards for the individuals who were in the house at the time of the search. These individuals included Laura Grays, Devon Mennett, Lee Arlee, Dante Fox, and Terrell Spencer. Arlee, Fox, and Terrell Spencer all gave the address of the house identified in the search warrant as their residence.

¶ 6        Following Officer Green's testimony, the State introduced a certified copy of the defendant's conviction in case number 06 CR 10848, in which he had pled guilty to aggravated unlawful use of a weapon and was sentenced to 18 months' probation on December 12, 2008.

¶ 7        The defendant called four witnesses to testify on his behalf. Liana Grays, the defendant's younger sister, testified that she lived at 2101 South 12th Avenue in Maywood and was in the living room when the police executed the search warrant. She also stated that, when the police entered the house, they met her cousin, Dante Fox, at the front door. The officers then told her to get on the floor while they searched and questioned her. According to Liana, the defendant was in the backyard of the house that day, but he did not live at the house, nor did he run to the back of the house when the police arrived. Liana admitted that she had a previous felony conviction for possession of a controlled substance from 2004 and that she is close to her brother and would not want anything bad to happen to him.

¶ 8        Dante Fox, the defendant's cousin, testified that he lived at the house in Maywood and

was in the living room with Liana when the police arrived. According to Fox, the police told them to get down and put their hands up. Fox stated that he did not see the defendant run through the house when the police arrived and that he had not seen the defendant before the police arrived. He also acknowledged that he was close to the defendant and did not want anything bad to happen to him. In addition, Fox denied that he had ever spoken with the defendant about what occurred that day.

¶ 9 Laura Grays, the defendant's mother, testified that she operated a cash business from her home, selling packaged dinners for $10 each, and that she was in the kitchen when the police arrived. Laura denied that the defendant lived in her house at that time, but she acknowledged that he was in the backyard when the police came to execute the search warrant. She also denied seeing the defendant run through the house and out of the back door, though he had been inside the house earlier that day. According to Laura, the residents of the house consisted of herself, her daughter, Liana, Dante Fox, Michael Jenkins, and Devon Mennett. Laura also testified that she had never spoken with her son about the case.

¶ 10 Edwin King testified that he was the defendant's barber. King stated that, when the police arrived, he was in the kitchen because he wanted to purchase two packaged dinners from the defendant's mother. King stated that he did not live at the house and did not know where the defendant lived on March 21, 2009. King further stated that he had seen the defendant in the backyard earlier, but he did not know where the defendant was when the police arrived. King testified that he had cut the defendant's hair several times since the date of the search and that, although the defendant told him to be in court to testify, he had never spoken with the defendant about what occurred that day.

¶ 11 During closing arguments, the prosecutor stated that the letter from the probation department was dated "March 11, 2009, approximately ten days prior to this incident." In finding the defendant guilty, the trial judge stated that his ruling was predicated on his observation of the witnesses and his review of the exhibits. The court found that Officer Green was a "competent," "credible," and "good witness," and, based on the items recovered from the third bedroom, the court concluded that the defendant lived at the house. In particular, the court noted that there was "proof of residency dated almost on top of the date the search warrant was executed." The court further noted the defendant's Illinois identification card listed that address as his residence and that the photographs depicted the defendant and other men displaying gang signals. In addition, the court observed that, as soon as the defendant was apprehended and before the premises had been searched, he told the officers that all they were going to find was money and that the officers found almost $24,000 in cash, of which $9,000 was found along with ammunition on the dresser in the third bedroom. The court determined that the defendant's knowledge of the presence of the cash, coupled with the items indicating that he resided in the house, established that the defendant lived there.

¶ 12 The trial court further found that, although the defense witnesses were "not terrible," they were "tainted" by their relationships with the defendant and that "a dark cloud" was cast over their testimony. The court rejected as entirely implausible the defendant's theory that he did not live at the house but knew there would be a large amount of money there because his

mother sold dinners for $10 each. The trial court also found it significant that the defendant connected himself to the revolver by stating that, considering the amount of money he had, it was necessary to have a gun. In particular, the court commented that, "[o]nce the gun is found, it's like, well, yeah, I've got a gun, you've got to have a gun if you've got this much money. His gun, his money, he constructively possessed it."

¶ 13    The defendant filed a motion for a new trial, arguing that he had not been proven guilty beyond a reasonable doubt. In denying the motion, the trial court reiterated that the proofs of residence recovered from the same bedroom as the bullets and the defendant's statement to the police that they would not find anything but money were strong evidence of his residence at the house and his possession of those bullets. In addition, the court stated that the defendant's admission about having a gun in conjunction with that quantity of money established his possession of the firearm.

¶ 14    Following a sentencing hearing, the court sentenced the defendant to three years in the Illinois Department of Corrections, with a recommendation for boot camp. The court also imposed a fine of $15,000 to be collected from the money recovered during the search. This appeal followed.

¶ 15    The defendant initially argues that the State failed to prove him guilty beyond a reasonable doubt. We disagree.

¶ 16    The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court " 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant challenges the sufficiency of the evidence, the appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); see also *People v. Collins*, 214 Ill. 2d 206, 217, 824 N.E.2d 262 (2005). It is not the role of the reviewing court to retry the defendant, and a conviction will not be set aside unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178 (2006). In reviewing the evidence, we will not substitute our judgment for that of the trier of fact. *Sutherland*, 223 Ill. 2d at 242. The determination of the weight to be given the witnesses' testimony, their credibility, resolution of inconsistencies and conflicts in the evidence, and reasonable inferences to be drawn from the testimony are the responsibility of the trier of fact. *Sutherland*, 223 Ill. 2d at 242.

¶ 17    Section 24-1.1(a) provides, in relevant part, as follows:

"It is unlawful for a person to knowingly possess *** in his own abode *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2008).

When a defendant is not found in actual possession, the State must prove constructive possession. *People v. McCarter*, 339 Ill. App. 3d 876, 879, 791 N.E.2d 1278 (2003). To

establish constructive possession, the prosecution must prove that the defendant (1) had knowledge of the presence of the firearm and ammunition and (2) exercised immediate and exclusive control over the area where the firearm and ammunition were found. *McCarter*, 339 Ill. App. 3d at 879; *People v. Brown*, 327 Ill. App. 3d 816, 824, 764 N.E.2d 562 (2002). Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found. *People v. Beverly*, 278 Ill. App. 3d 794, 798, 663 N.E.2d 1061 (1996). Control is established when a person has the "intent and capability to maintain control and dominion" over an item, even if he lacks personal present dominion over it. *People v. Frieberg*, 147 Ill. 2d 326, 361, 589 N.E.2d 508 (1992). The defendant's control over the location where weapons are found gives rise to an inference that he possessed the weapons. *McCarter*, 339 Ill. App. 3d at 879. Habitation in the premises where contraband is discovered is sufficient evidence of control to constitute constructive possession. *People v. Cunningham*, 309 Ill. App. 3d 824, 828, 723 N.E.2d 778 (1999). " 'Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them.' " *Cunningham*, 309 Ill. App. 3d at 828 (quoting *People v. Lawton*, 253 Ill. App. 3d 144, 147, 625 N.E.2d 348, 350 (1993)). In deciding whether constructive possession has been shown, the trier of fact is entitled to rely on reasonable inferences of knowledge and possession, absent other factors that might create a reasonable doubt as to the defendant's guilt. See *People v. Smith*, 191 Ill. 2d 408, 413, 732 N.E.2d 513 (2000).

¶ 18    In this case, the evidence presented at trial established that three live rounds of .357-caliber ammunition were found on the dresser in the third bedroom, along with numerous bundles of cash totaling more than $9,000. In the closet of that same room, the police discovered the defendant's Illinois identification card, listing the address of the house as his residence, as well as the December 29, 2008, letter mailed by the Cook County probation department to the defendant at that address, a set of keys that operated the exterior doors of the house, two photographs depicting the defendant, and men's clothing. In addition, Officer Green testified that the defendant made two statements while the officers were on the premises: before the search had begun, the defendant told the officers that they would not find anything but money; after the three rounds of .357-caliber ammunition were discovered along with several bundles of cash on the dresser in the third bedroom, the defendant made a statement to the effect that he needed to have a gun because of the amount of money that he had. As the trial court observed, by making these statements, the defendant linked himself to both the gun and the large amounts of cash recovered in the house. Moreover, Officer Green's testimony that the defendant fled from the house by running from the living room and out to the backyard would support a reasonable inference that he had knowledge of the presence of the revolver and ammunition. See *People v. Harris*, 52 Ill. 2d 558, 561, 288 N.E.2d 385 (1972) (holding that evidence of flight is admissible as a circumstance tending to show consciousness of guilt); *People v. Peete*, 318 Ill. App. 3d 961, 966, 743 N.E.2d 689 (2001). Viewing all of the evidence in the light most favorable to the prosecution, coupled with the reasonable inferences that may be drawn therefrom, we conclude that a rational trier of fact could have found that the defendant constructively possessed the revolver and the

ammunition recovered at the time of the search and that the State had proven the essential elements of unlawful possession of a weapon by a felon beyond a reasonable doubt. See *Jackson*, 443 U.S. at 319; *Collins*, 214 Ill. 2d at 217.

¶ 19 In reaching this conclusion, we reject the defendant's claim that the trial court improperly relied on evidence of other crimes and placed undue emphasis on the substantial amount of money that was recovered during the search. The record reflects that the trial judge stated that "the money only shows that [the defendant] had an awareness of what was going on in the house" and that "that's not why I'm finding him guilty. He knew about the money right away, indicating he lived *** there. When he talks about the gun, he talked about the fact that it was a necessity when considered in concert with the money." Nor did the court demonstrate faulty reasoning by stating "[h]is gun, his money, he constructively possessed it." When read in context, this comment clearly indicates that the trial judge was merely stating his ultimate conclusion that the defendant constructively possessed the revolver, which the defendant had indicated was necessary in order to safeguard the large amounts of cash he had in the house.

¶ 20 We are also unpersuaded by the defendant's assertion that his conviction was based on speculation and misstatements of the facts because the trial court did not recall the evidence as to the timing of his statement regarding the need for a gun. Though the court did remark at one point that the defendant's statement was made "[o]nce the gun [was] found," the court previously had found that the statement was made "before the gun [was] recovered," which was consistent with the testimony of Officer Green.

¶ 21 In addition, we do not agree that the trial court's statement that there was "proof of residency dated almost on top of the date the search warrant was executed" mandates reversal of the defendant's conviction. This comment apparently related to the December 29, 2008, letter from the Cook County probation department, which was mailed to the defendant almost three months prior to the search of the house. Though it appears that the trial judge's reference to the timing of that letter was mistaken, that circumstance does not demonstrate a violation of the defendant's due process rights. As set forth above, the totality of the evidence presented at trial, considered with all reasonable inferences that may be drawn therefrom and in the light most favorable to the prosecution, supports a finding that the defendant constructively possessed the revolver and ammunition recovered during the search.

¶ 22 Finally, we reject the defendant's contention that consideration of his statement regarding the need for a gun would violate the *corpus delicti* rule. The recovery of the revolver from above the kitchen cabinet constituted sufficient evidence to corroborate his incriminating statement. See *People v. Bounds*, 171 Ill. 2d 1, 42, 662 N.E.2d 1168 (1995) (holding that independent corroborative evidence required to corroborate a confession need not establish beyond a reasonable doubt that an offense occurred). Based on all of the above considerations, we hold that the evidence presented at trial was sufficient to prove the defendant's guilt of unlawful use of a weapon beyond a reasonable doubt.

¶ 23 We next address the defendant's argument that the unlawful use of a weapon (UUW) statute under which he was convicted is unconstitutional because it infringes on the right to

bear arms as guaranteed by the second amendment to the United States Constitution. Though this issue was not presented to the trial court, a constitutional challenge to a statute may be raised at any time. See *In re J.W.*, 204 Ill. 2d 50, 61-62, 787 N.E.2d 747 (2003); *People v. Williams*, 2011 IL App (1st) 093350, ¶ 49. Whether a statute is constitutional is a question of law to be reviewed *de novo*. *People v. Morgan*, 203 Ill. 2d 470, 486, 786 N.E.2d 994 (2003); *Williams*, 2011 IL App (1st) 093350, ¶ 49. The second amendment provides as follows:

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 24    Relying on the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010), the defendant contends that, because the core of the second amendment is the protection of an individual's right to keep a firearm in his home for self-defense, the UUW criminal statute is facially unconstitutional under the second amendment and is unconstitutional as applied to him under the specific facts of this case because his prior felonies were nonviolent. We disagree with both contentions.

¶ 25    In *Heller*, the Supreme Court struck down a District of Columbia ordinance because it imposed a total ban on possession of a functional handgun in the home and required that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable. *Heller*, 554 U.S. at 628. The Court's decision was based on its conclusion that the second amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. In *McDonald*, the Supreme Court struck down two similar municipal ordinances and held that the protections of the second amendment applied to the states through the due process clause of the fourteenth amendment. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3050. The Court also held that the right to bear arms under the second amendment is a fundamental right. *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3036-37 (citing *Heller*, 554 U.S. at 594).

¶ 26    In addressing the defendant's argument, we initially consider the level of constitutional scrutiny that should be applied to the UUW statute in this case. Although statutes limiting a fundamental right are typically subject to strict scrutiny and, therefore, are presumed to be unlawful (see *People v. Aguilar*, 408 Ill. App. 3d 136, 145, 944 N.E.2d 816 (2011) (citing *Harris v. McRae*, 448 U.S. 297, 312 (1980)), *appeal allowed*, No. 112117 (Ill. May 25, 2011)), the Supreme Court has declined to impose this level of scrutiny to statutes prohibiting felons from possessing firearms and has specifically recognized that such statutes are presumptively valid (see *Heller*, 554 U.S. at 627 n.26). Therefore, we find that the intermediate level of scrutiny applies. See *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 18; *People v. Mimes*, 2011 IL App (1st) 082747, ¶ 74 (and cases cited therein); *People v. Ross*, 407 Ill. App. 3d 931, 939 (2011) (and cases cited therein); *Aguilar*, 408 Ill. App. 3d at 146. To satisfy the intermediate level of constitutional scrutiny, the challenged statutory provision must serve a significant, substantial or important governmental interest, and the fit between the challenged law and the asserted objective must be reasonable. *Mimes*, 2011 IL App (1st) 082747, ¶ 74; *Wilson v. Cook County*, 407 Ill. App. 3d 759, 767, 943 N.E.2d

768 (2011), *appeal allowed*, No. 112026 (Ill. May 25, 2011); see also *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

¶ 27     Statutory enactments are presumed constitutional, and it is the duty of the court to construe a statute so as to affirm its constitutionality, if such a construction is reasonably possible. *People v. Cornelius*, 213 Ill. 2d 178, 189, 821 N.E.2d 288 (2004). In addition, because the legislature has wide latitude in prescribing criminal penalties under its police power and has an obligation to protect its citizens from known criminals, a party raising a constitutional challenge has the burden of proving that the statute fails to comply with the requirements of due process. *People v. Jones*, 223 Ill. 2d 569, 596, 861 N.E.2d 967 (2006); *Ross*, 407 Ill. App. 3d at 939.

¶ 28     The UUW statute prohibits the possession of a firearm or ammunition by any person previously convicted of any felony. 720 ILCS 5/24-1.1(a) (West 2008). The purpose of this statute is to protect the public from the danger posed by convicted felons possessing firearms. *Robinson*, 2011 IL App (1st) 100078, ¶ 19; *Aguilar*, 408 Ill. App. 3d at 146; *People v. Davis*, 408 Ill. App. 3d 747, 750, 947 N.E.2d 813 (2011); *People v. Crawford*, 145 Ill. App. 3d 318, 321, 495 N.E.2d 1025 (1986).

¶ 29     The defendant cites *Heller* and *McDonald* in support of his claim that the UUW statute violates his second amendment right because it precludes him from possessing a firearm within his home for the purpose of self-defense. However, the Supreme Court recognized that certain classes of people may be disqualified from the exercise of second amendment rights (*Heller*, 554 U.S. at 635) and that federal and state legislatures and local governments have police powers to pass laws that promote the health, safety and general welfare of their citizens, and that the police power includes the power to regulate certain aspects of gun possession and ownership (*McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047). In addition, the Court has explicitly stated that its decisions in *Heller* and *McDonald* did not "cast doubt on such longstanding *** 'prohibitions on the possession of firearms by felons.' " *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047 (quoting *Heller*, 554 U.S. at 571).

¶ 30     The defendant contends the Supreme Court's statements in *Heller* and *McDonald* relating to statutes prohibiting the possession of firearms by felons constitute *dicta* and do not govern our resolution of the instant case. However, judicial *dicta* are entitled to much weight and should be followed by an inferior court. See *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d 715 (1993); see also *People v. Williams*, 204 Ill. 2d 191, 206, 788 N.E.2d 1126 (2003); *Davis*, 408 Ill. App. 3d at 750.

¶ 31     We conclude that the UUW statute is substantially related to the important governmental objective of protecting the health, safety and general welfare of its citizens, and the fit between the UUW statute and that governmental objective is reasonable. See *Robinson*, 2011 IL App (1st) 100078, ¶ 26; *Davis*, 408 Ill. App. 3d at 750. Therefore, the UUW statute does not, on its face, violate the second amendment. See *Robinson*, 2011 IL App (1st) 100078, ¶ 28; *Davis*, 408 Ill. App. 3d at 750.

¶ 32     Defendant also challenges the constitutionality of the UUW statute as it was applied to him because his prior convictions were for nonviolent felonies. In response, the State

correctly asserts that this argument is not subject to review where the defendant failed to litigate the issue in the trial court and, therefore, the court did not conduct an evidentiary hearing or make a factual finding as to whether the defendant possessed the firearm and ammunition for the purpose of self-defense. See *In re the Parentage of John M.*, 212 Ill. 2d 253, 268, 817 N.E.2d 500 (2004) (holding that "[a] court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact"); see also *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 228, 930 N.E.2d 895 (2010). Moreover, we note that, even if the trial court had conducted an evidentiary hearing and made sufficient factual determinations, we would reject the defendant's claim where the UUW statute does not include any exception for persons convicted of nonviolent felonies (720 ILCS 5/24-1.1(a) (West 2008)), nor has the Supreme Court recognized any such exception in *Heller* or *McDonald*.

¶ 33      For the reasons set forth above, the defendant's conviction and sentence are affirmed.

¶ 34      Affirmed.