2020 IL App (1st) 172829-U

FIFTH DIVISION
January 10, 2020

No. 1-17-2829

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15 CR 6548 |
| | ) | |
| RAQUELLE KEEFER, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court did not abuse its discretion in its ruling on evidence related to defendant's motion *in limine*. The court effectively cured any error by providing a limiting instruction regarding the evidence presented in violation of the motion *in limine*. Defendant is not entitled to a new trial when he himself invited additional error after the court's correction. The court did not abuse its discretion in imposing defendant's sentence.

¶ 2    A jury convicted defendant Raquelle Keefer of two counts of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)). The circuit court sentenced defendant to eight years' imprisonment. On appeal, defendant challenges the admission of evidence that police found a large sum of money in his home and contends that the State twice violated a motion *in limine* ruling

precluding evidence that police recovered cannabis in his home. In addition, defendant argues that he received an excessive sentence. We affirm.

¶ 3                                    BACKGROUND

¶ 4     On March 23, 2015, Chicago police executed a search warrant for the recovery of two firearms from defendant at his residence located on South Parnell Avenue in Chicago. The defendant was arrested and charged under indictment with two counts of being an armed habitual criminal and eight counts of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)). The State voluntarily dismissed the counts for unlawful possession of a weapon and proceeded to trial on the two counts of being an armed habitual criminal.

¶ 5     Before trial, defendant moved *in limine* to preclude the State from introducing evidence that $39,000 in cash and a small amount of cannabis were recovered in his home along with the two firearms. Defendant argued that the admission of the money and drugs would suggest to the jury that he was a drug dealer. The circuit court heard argument on the motion and precluded evidence of the drugs recovered in his home. However, the court also noted defendant acknowledged in a preliminary hearing that the money found in the home belonged to him. The court partially denied defendant's motion *in limine* on the admission of the money, concluding:

"I think that does go to show residency in this case.  It goes to show the knowledge

of the money.  The admission of the money goes to show that just like [*People v.*

*Spencer*, 2012 IL App (1st) 102094] if he knows about the presence of the cash and

that its located there it goes to establish that he lived there and to establish

residency.  So I find based upon that that it would be relevant in the case."

¶ 6     At trial, Chicago police officer G. McFadden testified that on March 23, 2015, at about 7:50 p.m., he and a team of officers executed a search warrant on the residence in question. As

other officers attempted to breach the front entrance of the home, Officer McFadden positioned himself at the back of the home, where he observed defendant attempt to flee through a first floor window. He then identified defendant in open court as the person attempting to escape. During the execution of the warrant, Officer McFadden ordered defendant to stop as the entry team cleared the home and detained defendant in the enclosed porch at the rear of the home. He read defendant his *Miranda* warnings, which defendant indicated that he understood. Defendant voluntarily agreed to speak to Officer McFadden and the officers standing in the porch. Officer McFadden asked defendant "if there was anything in the house that I should know about." Defendant told Officer McFadden that a black revolver was in a kitchen cabinet and a .40 caliber firearm was located in a fish tank in the front room. Three police officers searched the kitchen and the front room and found the weapons in the locations defendant described.

¶ 7    Chicago police officer Joseph Chlipala testified that he was one of the officers who recovered a Glock .40 caliber semiautomatic weapon from a cabinet underneath the fish tank during the execution of the search warrant. He photographed and inventoried the weapon and its ammunition and then proceeded to the kitchen. There, Officer Chlipala also photographed and inventoried the revolver located by another officer.

¶ 8    The State next asked whether Officer Chlipala recovered anything else on the first floor of the residence. Defense counsel objected on the basis of foundation. The circuit court requested a sidebar. The court asked the State whether it was going to elicit testimony concerning the drugs because it wanted to ensure Officer Chlipala "wasn't going to step into that." The State responded that it sought to elicit testimony of the money recovered from the home. The court sustained the objection and stated that the officer "will be able to testify to what happened, where he was called

3

to, what he was given etc. But he can't testify that, you know, officer so and so recovered the money from the dresser [and] then he called me."

¶ 9 After the sidebar, the State asked Officer Chlipala whether he was directed anywhere else by any of the officers. He responded that he was directed to a bedroom on the first floor, where another officer had recovered a bag, at which point defense counsel objected and the circuit court sustained the objection. Officer Chlipala continued testifying that another officer directed him to enter a bedroom on the first floor. Inside the bedroom, he observed a bag with a large amount of money inside. Officer Chlipala photographed the bag and inventoried it. He then proceeded to a basement bedroom, stating "[f]rom there some cannabis was recovered." Defense counsel objected and the court sustained the objection.

¶ 10 The State asked immediately thereafter whether Officer Chlipala searched anywhere else on the first floor of the home. Officer Chlipala responded that he proceeded to the front room, where he observed a pile of envelopes with defendant's name on them. He photographed those envelopes and inventoried them. After the search concluded, the officers took the inventoried items and defendant to the police station for processing.

¶ 11 Officer Chlipala next authenticated the evidence collected and inventoried at the scene, which was then published to the jury. He testified that defendant indicated he resided at the home during the search.

¶ 12 Before Officer Chlipala's cross-examination, the circuit court ordered another sidebar due to its concern that the officer had already mentioned the presence of drugs at the home. The court proposed providing a limiting instruction to the jury that a "misdemeanor amount of cannabis [was] recovered from the basement [t]hat was not attributed to [defendant]." At that point, defendant moved for a mistrial due to the violation of the motion *in limine*, which the court denied.

The court again offered to provide a limiting instruction, but defense counsel stated, "I think we want to leave it alone. I don't want to highlight it. I have made my record." The court then stated, "I want to make sure that the record is clear that should you choose not to avail yourself of my offer of a limiting instruction and that [the jury is] told it's a misdemeanor[,] it's not attributed to your client and disregard it." Defense counsel responded that "[i]t will be to not highlight that fact, but I'm not in a position at this particular moment to make a final decision on that." The court stated that defense counsel could take time to think about that decision and could instead decide to include the limiting instruction at the end of trial.

¶ 13    On cross-examination, Officer Chlipala testified about the evidence recovered from the premises that he included in his police report. Defense counsel asked the officer about the money recovered from the scene, stating "are you aware that where this money was located there were also files and folders and paper work regarding the buying and selling of automobiles. Were you award of that?" Officer Chlipala responded affirmatively and stated that he did not take photographs of that documentation. Defense counsel then asked whether "there was anything preventing you from doing that or you chose not to?" After the circuit court overruled an objection from the State, the officer answered, "[o]f financial records for evidentiary value. The money was inventoried due to the large amount of quantity. Narcotics were also recovered from the house." Defense counsel objected and the court sustained the objection. Officer Chlipala explained that the money was inventoried "because after Mr. Keefer was taken into custody and transported to the station if I were to leave what was $39,400 *** and the money came up missing that would be a complaint against me." Officer Chlipala agreed that he did not take any photographs of the documentation located near the money. Defense counsel then asked, "And if the drugs were located

near the money you would have taken photographs of those; correct?" The State objected and the court sustained the State's objection.

¶ 14    After Officer Chlipala's testimony concluded, defendant renewed his motion for mistrial because the officer "intentionally violated this court's order on a motion *in limine*." The circuit court denied the motion for mistrial, stating:

"I have no problem with his demeanor. It was a very vigorous cross-examination. Very animated. The demeanor of counsel that was questioning him was *** angry and accusatory in an appropriate manner. I'm not saying it was inappropriate at all. You are representing your client strongly. I think he was reacting to that. He did answer the question. So the jury will ultimately make a credibility determin[ation].

The question was at one point he said there were narcotics. The objection was sustained. I don't know if he was talking about cannabis inaccurately referring to his narcotic [or] if he was talking about negative white powder. Whatever came out what it was. The jury would assume that it was the same that already come [*sic*] out."

¶ 15    The circuit court again proposed a limiting instruction to the jury, which defense counsel accepted. The court then admonished the jury:

"You did hear testimony there was cannabis recovered from the basement bedroom of the house in question. I want to let you know that was a misdemeanor or small amount. You're not to consider it. It's not relevant to this defendant. It's not relevant to these charges. And that has not been, when I say that, the cannabis that

was talked about has not been attributed to Mr. Keefer. All right. So you are to disregard."

¶ 16     Chicago police officer Roderick Dillard testified that he inventoried the firearms, money, and the envelopes recovered from the house and stated that the police did not request that DNA or fingerprint testing be performed on the weapons. Chicago police officer Christopher Lenti testified that the recovered firearms were in working order and capable of discharging live rounds of ammunition. The parties stipulated that defendant had two prior qualifying felony convictions to establish the statutory requirement for the offense of being an armed habitual criminal. After the State rested its case in chief, defendant moved for a directed finding and judgment of acquittal, which the court denied. Defendant did not testify or present any witnesses or additional evidence.

¶ 17     At a sidebar before closing argument, the court reiterated that it had allowed evidence of the money found on the premises to be admitted for the limited purpose of establishing defendant's residency at that location. The court stated that it had confidence the State would argue this issue properly during closing argument, but it made a record of the discussion to avoid unnecessary objections.

¶ 18     During closing argument, the State asked why defendant would voluntarily tell the officers where the weapons were located, stating "defendant told them where the guns were because he hoped that these officers would recover the guns and stop searching." Defendant objected and the court overruled the objection. The State contended the officers "continued searching and they found $39,000 in cash in the defendant's bedroom." The State argued that once the officers found the money, they brought it to defendant, who confirmed the money belonged to him. The State argued, "That's his money. That's his bedroom. That's his house. That's where he lives.

Everything in that house is his and he knows about it." The State made no mention of the excluded drugs found at the premises.

¶ 19    During defendant's closing argument, defense counsel voluntarily mentioned the excluded drugs and later argued, "You notice how they've got $39,000. We know what that's about. They're trying to give you the impression that he's a drug dealer protecting his stash." The State objected and the circuit court sustained the objection. The court stated, "That is absolutely not what that evidence was admitted for and that argument has not been made, and the jury will be instructed to not make that inference and to disregard that argument." Defense counsel then stated to the jury that the "$39,000 was there because he auctions cars." The defense argued that the officers chose not to photograph the documentation supporting the source of the money because of their bias and prejudice. In rebuttal, the State argued it did not dispute that defendant earned the money found in the home from car sales. However, the State also argued that defendant needed two guns in his home to protect that cash.

¶ 20    The jury found defendant guilty on both counts of being an armed habitual criminal. Before sentencing, defendant presented 21 very detailed and personal character-supporting letters from family members, clergy, co-workers, and others. The circuit court indicated that it had considered the statutory factors in mitigation, including the substantial period of time between offenses, defendant's likelihood of reoffending, and that his incarceration would pose a hardship upon his dependents. The court also considered the requisite factors in aggravation, including defendant's criminal history and the deterrence value attached to his sentence. The court sentenced him to eight years in prison, which is only two years above the statutory minimum of six years. The court also denied defendant's motion for a new trial or for judgment of acquittal and oral motion seeking leave to file a motion to reconsider sentence. This appeal followed.

¶ 21                                        ANALYSIS

¶ 22    Defendant argues on appeal that he is entitled to a new trial because the circuit court

allowed the State to introduce prejudicial evidence of the $39,000 recovered in his home. He

contends the money was irrelevant to the question of whether he possessed the weapons because

his residency was not in issue. He also argues that he is entitled to a new trial because the State

twice violated the motion *in limine* order precluding evidence that drugs were found in defendant's

home. Finally, defendant argues he received an excessive sentence considering the nature of the

offense, his criminal history, and his rehabilitative potential.

¶ 23                                   Motion *in Limine*

¶ 24    The circuit court partially denied defendant's motion *in limine*, allowing the State to

introduce evidence of the $39,000 recovered from defendant's home specifically to establish his

residency at that location. Further, the court partially granted defendant's motion, precluding any

mention of the drugs the officers found in the basement of the home. However, Officer Chlipala

twice testified that narcotics were recovered in the home. We address these issues in turn.

¶ 25    Defendant argues that evidence of the money recovered from the home was irrelevant to

the possession of the weapons, and to the purported justification that the admission of the money

was necessary to establish his residency. Defendant contends this is particularly true considering

the money was found in a different location than the weapons. Defendant argues that because his

knowledge of the presence of the weapons was established through properly presented evidence,

there was no need to present the money to establish possession.

¶ 26    "A defendant's guilt must be established by legal and competent evidence, uninfluenced

by bias or prejudice raised by irrelevant evidence." *People v. Bernette*, 30 Ill. 2d 359, 371 (1964).

The determination of whether evidence was "legal and competent" hinges, in turn, on whether the

evidence was relevant and admissible. Although a defendant has the right to present a defense (*People v. Manion*, 67 Ill. 2d 564 (1977)), a circuit court may prevent a defendant from introducing irrelevant or unreliable evidence. *People v. Hayes*, 353 Ill. App. 3d 578, 583 (2004). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). And relevant evidence is admissible so long as its probative value is not substantially outweighed by the danger that it will unduly prejudice the party against whom it is admitted. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 27    In assessing the circuit court's decision regarding the admission of evidence, we must determine whether the proffered testimony would have made the question of the defendant's guilt of the charged offenses more or less probable. *Hayes*, 353 Ill. App. 3d at 583. It is axiomatic that "[i]n all criminal cases it is important that the evidence be fairly limited to the issue on trial, as collateral or extraneous matters can only mislead or prejudice a jury." *People v. Pickett*, 34 Ill. App. 3d 590, 598–99 (1975). The admissibility of evidence sought to be excluded as irrelevant is committed to the sound discretion of the circuit court, and we will only reverse a decision whether to admit evidence if the court abused its discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). An abuse of discretion occurs when the trial court's decision is "arbitrary, fanciful or unreasonable," or where "no reasonable person would agree with the position adopted by the trial court." *Id.*

¶ 28    We first note that defendant has forfeited this issue because he failed to make a proper objection at trial contesting the relevancy of the money. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (holding that, to preserve an error, a party must contemporaneously lodge an objection and raise the issue in a posttrial motion). Here, defendant objected at trial before the introduction of

evidence concerning the money, but he objected on the basis of foundation rather than relevancy. An objection on specific grounds forfeits assignments of error on other grounds not specified. *People v. Steidl*, 142 Ill. 2d 204, 230 (1991). Failure to raise an error to the circuit court with sufficient specificity results in forfeiture. *Id.*

¶ 29    Forfeiture aside, we reject defendant's argument. Possession of contraband may be either actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Where, as here, defendant is not found in actual physical possession of the contraband, the State must prove that he had constructive possession. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession exists where the defendant had knowledge of the presence of the drugs, firearm and ammunition, and had immediate and exclusive control over the location where the items were found. *Id.* Knowledge may be demonstrated by evidence of the defendant's declarations, acts, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found. *Id.* Control is established when the defendant has the capability and intent to maintain dominion and control over the contraband, even if he lacks personal present dominion over it. *Id.* (citing *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). Proof that the defendant had control over the premises where the contraband was found gives rise to an inference of his knowledge and possession of that contraband. *Givens*, 237 Ill. 2d at 335.

¶ 30    A defendant's habitation in the premises where contraband is found is sufficient evidence of his control of the location to establish constructive possession. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. "Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them." (Internal quotation marks omitted.) *Id.* (quoting *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999) (quoting *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993))). See also *People v. Spann*, 332 Ill.

App. 3d 425, 445 (2002) (defendant had constructive possession of drugs found in apartment where he "stayed in the apartment, paid rent there, and possessed a key to the apartment").

¶ 31    In *Spencer*, the evidence presented at trial established that three live rounds of .357-caliber ammunition were found in a bedroom, along with numerous bundles of cash totaling $9,000. In the same bedroom, police officers found an identification card listing the address of the house as the defendant's residence, in addition to a letter addressed to the defendant at the same address. The defendant initially made a statement to the officers that they would not find anything but money and, after the officers found the ammunition, he made an additional statement that he needed to have a gun because of the amount of money he kept on the premises. *Spencer*, 2012 IL App (1st) 102094, ¶ 18. The court found that, "by making these statements, the defendant linked himself to both the gun and the large amounts of cash recovered in the house." *Id*. In addition, the defendant attempted to flee from the house, which the court found supported a reasonable inference that he had knowledge of the presence of the weapon and ammunition. *Id*. The court concluded that this evidence, coupled with the reasonable inferences that may be drawn therefrom, established that a rational trier of fact could have found the defendant constructively possessed the weapon and ammunition recovered at the time of the search. *Id*.

¶ 32    In this case, defendant himself made a statement to police acknowledging the cash was his, and that admission was relevant because it tended to show that he lived at the Parnell address. Like *Spencer*, defendant attempted to flee, a circumstance tending to show consciousness of guilt. See *People v. Harris*, 52 Ill. 2d 558, 561 (1972). The circuit court considered defendant's argument at great length and still found that "any evidence that is relevant in a criminal prosecution very often is prejudicial and that's the nature of the state's evidence," and "[t]he fact that it's prejudicial in and of itself does not bar it from being introduced by the state." We agree and find the probative

value of the cash evidence was not significantly outweighed by the danger of unfair prejudice. *Spencer*, 2012 IL App (1st) 102094, ¶ 18. Defendant's reliance on *People v. Barnes*, 182 Ill. App. 3d 75 (1989) is misplaced, because that case did not involve the issue of whether money found on the defendant's person was relevant to the issue of his residency and control over the firearm. Further, any risk of prejudice was alleviated by the State's introduction of evidence that defendant earned the money through the legal sale of cars. Finally, the issue of whether the money was relevant does not evaporate simply because there is also other evidence of residency. *Spencer*, 2012 IL App (1st) 102094, ¶¶ 18-19. Forfeiture aside, we conclude no abuse of discretion occurred in the circuit court's decision to allow evidence of the cash recovered at defendant's home.

¶ 33    Next, defendant argues the State committed prosecutorial misconduct when it violated the motion *in limine* ruling twice, allowing in evidence that cannabis was found in his home. He contends the introduction of this evidence deprived him of a fair trial because the jury heard that he possessed a large sum of money and drugs, implying that his criminal conduct far exceeded the nature of the crime for which he was being accused – possession of firearms. Defendant argues the introduction of the evidence tainted the proceedings, entitling him to a new trial.

¶ 34    Defendant's claim that the State violated the motion *in limine* mischaracterizes what occurred at trial. The State did not specifically elicit testimony from Officer Chlipala that he found cannabis at defendant's residence. The State asked Officer Chlipala whether he was directed anywhere else by any of the officers. This was a broad question that elicited a lengthy answer by the police officer, who eventually testified that he proceeded to the basement and found cannabis. Before Officer Chlipala's cross-examination, the circuit court proposed a limiting instruction to the jury, which defendant specifically rejected, stating "I think we want to leave it alone. I don't want to highlight it. I have made my record." Then during cross-examination, Officer Chlipala

again volunteered that narcotics were recovered from the house. Thus, the second violation of the motion *in limine* is not attributable to prosecutorial misconduct as defendant claims. After Officer Chlipala testified, the court admonished the jury that it could not consider evidence of the cannabis recovered from the premises because "[i]t's not relevant to this defendant" or "to these charges." The court specifically ordered the jury to disregard that testimony.

¶ 35    By its very nature, other-crimes evidence can be prejudicial to a defendant. *People v. Perez*, 2012 IL App (2d) 100865, ¶ 45. Generally, the risk associated with the admission of other-crimes evidence is that it might prove "overly persuasive to a jury, who may 'convict the defendant only because it feels he or she is a bad person deserving punishment.' " *People v. Ward*, 2011 IL 108690, ¶ 24 (quoting *People v. Lindgren*, 79 Ill.2d 129, 137 (1980)).

¶ 36    In this case, Officer Chlipala's testimony violated the circuit court's *in limine* order, but it did not deprive defendant of a fair trial. A timely, sustained objection and instructing the jury to disregard the testimony can correct this type of error. See *People v. Hall*, 194 Ill. 2d 305, 342 (2000) (State's question regarding defendant's prior criminal activity was improper, but error cured by sustaining objection and admonishing jury to disregard). Here, the court provided a limiting instruction. We find the testimony was not so prejudicial as to be incurable and deny defendant a fair trial. Furthermore, after the court provided the limiting instruction correcting the error, defense counsel again mentioned that drugs were recovered at the home during closing argument. See *People v. Hawkins*, 181 Ill. 2d 41, 58 (1998) ("[T]he law is understandably reluctant to aid litigants responsible for the very errors of which they complain"). Defendant cannot claim error that he invited, specifically on this record where the court attempted to provide a limiting instruction after the first violation and defendant declined, only later to once again reintroduce that evidence after the court provided the limiting instruction. *People v. Caffey*, 205 Ill. 2d 52, 114

(2001) ("When a party procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, that party cannot contest the admission on appeal.").

¶ 37    In sum, the circuit court gave appropriate and direct instructions to the jury to disregard the cannabis evidence and we must presume the jury followed its instructions. *Hall*, 194 Ill. 2d at 342. Further, defendant cannot contest an error he invited. *Caffey*, 205 Ill. 2d at 114.

¶ 38                              Excessive Sentence

¶ 39    Finally, defendant argues that his eight-year sentence is excessive considering the nature of the offense, his criminal history, and his rehabilitative potential. He seeks the minimum statutory sentence of six years' imprisonment. 720 ILCS 5/24-1.7(b) (West 2014);730 ILCS 5/5-4.5-25(a) (West 2014).

¶ 40    In imposing a sentence, the circuit court must balance relevant factors, such as the nature of the offense, the protection of the public, and the defendant's rehabilitative potential. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). The court has a superior opportunity to evaluate and weigh a defendant's credibility, demeanor, character, mental capacity, social environment, and habits. *Id.* In addition, a court is not required to expressly outline its reasoning for sentencing, and absent some affirmative indication to the contrary (other than the sentence itself), we must presume that the court considered all mitigating factors on the record. *People v. Perkins*, 408 Ill. App. 3d 752, 762-63 (2011). Since the most important sentencing factor is the seriousness of the offense, the court is not required to give greater weight to mitigating factors than to the seriousness of the offense, and the presence of mitigating factors neither requires a minimum sentence nor precludes a maximum sentence. *Alexander*, 239 Ill. 2d at 214.

¶ 41    We review a sentence within statutory limits for an abuse of discretion, and we may only alter a sentence when it varies greatly from the spirit and purpose of the law, or if it is manifestly

disproportionate to the nature of the offense. *Id.* at 212. So long as the circuit court does not ignore pertinent mitigating factors or consider either incompetent evidence or improper aggravating factors, it has wide latitude in sentencing a defendant to any term within the applicable statutory range. *Perkins*, 408 Ill. App. 3d at 762-63. This broad latitude means that this court cannot substitute its judgment simply because it might have weighed the sentencing factors differently. *Alexander*, 239 Ill. 2d at 212-13.

¶ 42    In this case, the applicable sentencing range for armed habitual criminal, a Class X felony, is no less than 6 years and no more than 30 years. 720 ILCS 5/24-1.7(b) (West 2014);730 ILCS 5/5-4.5-25(a) (West 2014). Thus, the circuit court's imposed eight-year sentence falls on the lower end of this statutory range.

¶ 43    Defendant's argument that he should receive a lesser sentence is unavailing. We acknowledge the reams of laudatory letters submitted on behalf of defendant, but note that the trial judge spent considerable time favorably commenting on them. Considering factors in mitigation, the court specifically noted that defendant had been a law-abiding citizen during the 10 years prior to the offense, which was "a significant amount or a substantial amount of time that comports with the factors in mitigation." The court also addressed defendant's rehabilitative potential, noting how defendant lived "a law-abiding life, so I think there is a significant possibility that this may not occur down the road in the future once this sentence has been completed." The court also gave consideration to the hardship on defendant's dependents.

¶ 44    The circuit court next considered the factors in aggravation, namely, defendant's criminal history and how a prison sentence could deter others from committing the same crime. The court stated "it's uncommon to get letters of mitigation submitted that have the depth of information and the depth of knowledge that the writers seem to have of this Defendant."

¶ 45    The circuit court had a superior opportunity to evaluate defendant's credibility, demeanor, and character, and we are prohibited from substituting our judgment for that of the circuit court simply because we might have weighed the sentencing factors differently. *Alexander*, 239 Ill. 2d at 212-13. Since defendant's sentence falls within the sentencing range, we cannot say that it varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.* at 212. Given defendant's prior record, a sentence which was only two years over the minimum and about 22 years below the maximum was not an abuse of discretion. *Id.*

¶ 46                              CONCLUSION

¶ 47    We find the circuit court did not abuse its discretion in its ruling on defendant's motion *in limine* and that the court effectively cured any error by providing a limiting instruction. Defendant is not entitled to a new trial when he himself invited additional error after the court's correction. Finally, we find defendant's sentence is not excessive.

¶ 48    Affirmed.