2019 IL App (1st) 161426-U

No. 1-16-1426

October 23, 2019

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 2607 |
| | ) | |
| IAN WILLIAMS, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Ellis and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for armed habitual criminal affirmed over his contention that the State failed to establish beyond a reasonable doubt his constructive possession of a firearm and ammunition.

¶ 2    Following a bench trial, defendant Ian Williams was found guilty of armed habitual criminal and two counts of unauthorized use or possession of a weapon by a felon (UUWF). The trial court merged the guilty findings and sentenced defendant to six years in prison for armed habitual criminal. On appeal, defendant contends that he was not proven guilty beyond a

reasonable doubt when the State failed to establish his constructive possession of the firearm and ammunition recovered. We affirm.

¶ 3    Following defendant's arrest, he was charged with armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)), possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(10) (West 2014)), and two counts of UUWF (720 ILCS 5/24-1.1(a) (West 2014)).

¶ 4    Officer Robert Slechter testified that on the morning of January 11, 2015, he was part of a team executing a search warrant on the 400 block of South Cicero Avenue (the South Cicero address). The first floor of the building was a storefront, and when no one answered, officers "forced entry into the ground level." As Slechter approached the second-floor apartment, he observed the front door "[c]ompletely open." When he entered, Slechter saw defendant walking out of the front bedroom, and detained defendant. Slechter also observed a "female black" standing in the middle of the front bedroom. Once all of the apartment's occupants were detained, the team began a "systematic search of the residence." Slechter searched the front bedroom and recovered a Colt 1911 .45-caliber handgun loaded with eight rounds from under a mattress. In a shoebox a "couple" of feet from the bed, Slechter recovered a sock containing 13 additional .45-caliber rounds. The shoebox also contained two Chicago Police Department "Victim Information Notices" and a credit card all bearing defendant's name. The victim information notices were dated December 9, and 17, 2014. Slechter identified photographs of the shoebox. These photographs show that the sock was tri-colored and that the letter's address is blocked by another document.

¶ 5    During cross-examination, Slechter testified that he did not recover any documents or mail at the apartment that had defendant's name and the South Cicero address. A letter recovered

from the shoebox listed the return addressee as "Naja Bleds." He did not see defendant put the gun under the mattress.

¶ 6    Officer Arthur Carlson testified that he recovered 48 tinfoil packets and a glass jar containing a "brown wet leaf substance" from the freezer in the kitchen. Based upon the odor of the brown leaf substance and his experience, Carlson believed these items to be PCP. Later, at a police station, Carlson advised defendant of the *Miranda* rights. Defendant then stated that "he had been shot two weeks prior and that his cousin had given him the gun [officers] found for his protection." Defendant further stated that he had moved to the South Cicero address to live with his father so that nothing would happen to his mother, who lived on West Van Buren. Defendant finally stated that he had started selling "L," or PCP, after he lost his job at a factory.

¶ 7    During cross-examination, Carlson testified that he did not recall whether defendant's name was on the mail box and was "not sure" if defendant had a key to the residence. He did not see a lease or any mail or utility documents addressed to defendant. There were four to six other people in the apartment. Defendant did not make a written statement. Carlson understood defendant's statement regarding "the gun" to mean the gun that was recovered from the apartment.

¶ 8    The parties stipulated that defendant had a "Class 2 narcotics" conviction in case number 01 CR 23276, and a "Class 1 narcotics" conviction in case number 03 CR 16179. A document from the Illinois State Police stating that defendant had not been issued a Firearm Owner's Identification Card or a concealed carry license as of March 20, 2015, was then entered into evidence. The State's photographic exhibits were also entered into evidence. The State rested and the defense made a motion for a direct finding, which the trial court denied. The court then

permitted the State to reopen its case in order to enter a stipulation that Martinique Rutherford would testify that of the 48 packets recovered in this case, "she found 17 *** to be PCP within a reasonable degree of scientific certainty." The defense made another motion for a directed finding, which the trial court denied.

¶ 9    Marvin Haney, defendant's stepfather, testified that he lived in the second-floor apartment with his son Jamal. Defendant did not live there; rather, he lived with his mother on West Van Buren. Defendant had never lived with Haney, his name was not on the lease or on the mailbox, and he did not have a key. On the night before defendant's arrest, there was a birthday party at the South Cicero address for another of Haney's stepsons, Amtaeus Williams. Around 9 a.m. the next morning, Haney, who was in his room, heard "somebody run upstairs" and "figured it was the police." There were two other people in the room with him. After the police knocked on his closed door, he stated that there was a puppy in the room and no one had weapons. Haney was "subleasing" the front bedroom to "[p]eople on the block, things like that." He did not know there was a gun in the front bedroom or PCP in the freezer.

¶ 10    During cross-examination, Haney acknowledged that defendant had been shot two weeks before his arrest and had moved out of his mother's house to protect her. However, defendant did not move in with Haney. Rather, he lived with "his mom" on Randolph. Haney then agreed that defendant's mother lived on West Van Buren. During redirect-examination, Haney testified that although defendant came to stay after defendant was shot, Haney "guess[ed]" defendant went back to his mother's home "a week or two after."

¶ 11    Amtaeus Williams, defendant's brother, testified that he and defendant lived on West Van Buren. Defendant did not live with Haney and never had. Williams and defendant spent the

night at Haney's after the birthday party. When Williams left at 7 a.m., defendant was still there. He denied that defendant moved out of their mother's home after being shot.

¶ 12    Loretta Corbett, who lived across the street from Haney, testified that she knew defendant and saw him every day. He lived on West Van Buren with his mother and grandfather. She attended the birthday party and left at 6 a.m. the next morning. Defendant was at the party and present in the apartment when she left. Corbett denied that defendant moved after he was shot; rather, he came to Haney's home while his mother was at work.

¶ 13    The trial court found defendant guilty of armed habitual criminal and two counts of UUWF. The court found that defendant, who had been previously convicted of two prior felony offenses, was in constructive possession of the firearm found under the mattress of the room from which defendant "was emerging" when the officers entered the apartment. The court further noted that defendant made a "statement concerning the weapon," that is, it was given to defendant by his cousin. With regard to the shoebox from which ammunition was recovered, the court noted that the shoebox contained a "very current" credit card which was "a valuable possession to have, if one is not working, with them wherever they live," and its presence in that room did "not make sense" otherwise. The shoebox also contained the victim information notices "obviously relative to Defendant having been shot." The court found defendant not guilty of possession of a controlled substance with intent to deliver. Defendant filed a motion for a new trial, which the court denied. The court merged the UUWF counts with the armed habitual criminal count and sentenced defendant to six years in prison for armed habitual criminal.

¶ 14    On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt because the State failed to establish his constructive possession of the firearm or ammunition

recovered. He notes that "three credible witnesses" testified that he did not live at the South Cicero address; rather, he lived with his mother and only spent the night following a party. He further argues that he did not constructively possess the contraband as he was merely observed exiting the room from which these items were recovered and no evidence showed that the gun he stated he received from his cousin was the same gun recovered from the South Cicero address.

¶ 15    When a defendant challenges his conviction based upon the sufficiency of the evidence presented against him, we must ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. All reasonable inferences from the record must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. It is the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Brown*, 2013 IL 114196, ¶ 48. A reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses. *Id*. A defendant's conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of his guilt. *Id.*

¶ 16    To prove defendant guilty of armed habitual criminal, the State was required to prove beyond a reasonable doubt that defendant possessed a gun after having been twice-convicted of certain qualifying felonies. See 720 ILCS 5/24-1.7(a) (West 2014). Defendant disputes only the element of possession.

¶ 17    Possession may be either actual or constructive. *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18. In this case, it is undisputed that defendant did not actually possess the contraband

recovered. We therefore confine our analysis to whether the evidence was sufficient to show that defendant constructively possessed the contraband.

¶ 18    We note that although the trial court merged its guilty findings and only entered a sentence on armed habitual criminal, defendant argues on appeal that the State failed to prove that he constructively possessed either the gun or the ammunition recovered.

¶ 19    To establish constructive possession, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the contraband and exercised immediate and exclusive control over the area where the contraband was found. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Knowledge may be demonstrated by evidence of a defendant's declarations, acts, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found. *People v Spencer*, 2012 IL App (1st) 102094, ¶ 17. Control is established when the defendant "has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *Id.* (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). "Circumstantial evidence may be used to prove possession and knowledge." *People v. Wright*, 2013 IL App (1st) 111803, ¶ 25. "Knowledge and possession are factual issues, and the trier of fact's findings on these questions will not be disturbed unless the evidence is so unreasonable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt as to defendant's guilt." *People v. Brown*, 277 Ill. App. 3d 989, 998 (1996).

¶ 20    After viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find beyond a reasonable doubt that defendant possessed the firearm and ammunition recovered from the front bedroom. The evidence at trial established that the

firearm and ammunition were recovered from the bedroom that an officer observed defendant emerge from. Moreover, the shoebox from which the ammunition was recovered contained a credit card with defendant's name on it, as well as Chicago Police Department notices dated the prior month that bore defendant's name. Crucially, Officer Carlson testified that defendant stated that he had moved to the South Cicero address in order to protect his mother and that his cousin had given him the gun for protection following his shooting. See *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19 (to establish constructive possession, the State must prove that the defendant had knowledge of the presence of the contraband and exercised "immediate and exclusive" control over the area where it was found).

¶ 21    Although defendant is correct that his stepfather, his brother, and his stepfather's neighbor testified that defendant did not live at the South Cicero address, defendant's stepfather gave conflicting addresses for defendant's mother and also admitted that defendant had lived at the South Cicero address for "a week or two." Here, the trial court was presented with defense witnesses that testified defendant did not live at the South Cicero address or that if he had, it was only temporarily, and the State presented a witness who testified that defendant stated that he moved to the South Cicero address after he was shot. The trial court found the State's witness credible, and the defense witnesses incredible, as evidenced by its guilty findings. We will not substitute our judgment for that of the trier of fact as to witness credibility. *Brown*, 2013 IL 114196, ¶ 48 (it is for the trier of fact to determine a witness's credibility and the weight to be given to testimony).

¶ 22    To the extent defendant concludes that because his statement to Officer Carlson did not specifically state that the gun given to him by his cousin was the same gun recovered from the

South Cicero address, it cannot be used as evidence of his "knowledge or control of the specific gun officers found in the bedroom," we disagree. Officer Carlson testified that defendant stated that "his cousin had given him the gun found for his protection." In any event, it was for the trial court to weigh the evidence presented at trial and draw reasonable inferences from the facts. See *id.*

¶ 23     We are unpersuaded by defendant's reliance on *People v. Maldonado*, 2015 IL App (1st) 131874. In that case, officers executing a search warrant at a single family house found heroin hidden inside a statue, a box containing two boxes of ammunition, and a box containing a scale and $1500 cash. The police also found an unopened, mass marketing mailer addressed to the defendant at the house's address, an unopened envelope from ABC Bank addressed to the defendant at the house's address, and a delivery receipt showing the defendant's name as the buyer, the house's address as the buyer's address, and the defendant's wife's signature in the area marked "received." The defendant was convicted of UUWF and possession of a controlled substance with intent to deliver.

¶ 24     On appeal, the court reversed, finding that the State failed to establish constructive possession with respect to the heroin and the ammunition. *Id.* ¶ 24. The court concluded that the State did not present any direct evidence establishing the defendant's control over the premises and that, even if the two mailings and one delivery receipt were sufficient to draw an inference that the defendant controlled the premises, the State did not present any evidence that the defendant had knowledge of the contraband found in the house. *Id.* Although the court acknowledged that mail addressed to a defendant found where contraband is recovered may be sufficient to allow an inference of residency, it would not draw the same inference when the

defendant was not present during the execution of the search warrant and other indicia of residency were not shown. *Id.* ¶ 29. The court further noted that the defendant never admitted his residency and there was no testimony that he was ever seen inside the house. *Id.* ¶ 34. The court then explained that the delivery receipt and unopened mail were "of minimal inferential value at best" and insufficient to establish proof of control beyond a reasonable doubt. *Id*. ¶¶ 34, 37. With regard to knowledge, the court determined that no reasonable inference flowed from the evidence that the defendant at any time would have known either the contents of a statue or the contents of the boxes where ammunition was found. *Id.* ¶¶ 41, 42.

¶ 25    Unlike *Maldonado*, in the instant case, defendant acknowledged in a verbal statement that he had moved to the South Cicero address following his shooting and that the gun was given to him by his cousin for protection. He was also observed exiting the bedroom from which the handgun and ammunition were recovered when the search warrant was being executed. Finally, both a credit card and month-old documents bearing defendant's name were recovered from the same room as the handgun and ammunition. We are unpersuaded by defendant's argument that because the tri-colored sock which held the ammunition was a woman's sock, any inference created by the items bearing his name is defeated. Thus, *Maldonado* is distinguishable from the facts here.

¶ 26    Ultimately, we find that the evidence presented at trial, when viewed in the light most favorable to the State, was sufficient that a rational trier of fact could have found defendant constructively possessed the firearm and ammunition recovered from the bedroom and supported the trial court's conclusion that defendant constructively possessed these items. See *Brown*, 2013 IL 114196, ¶ 48 (it is the responsibility of the trier of fact to resolve conflicts in the testimony, to

weigh evidence, and to draw reasonable inferences from the facts). We therefore affirm defendant's conviction for armed habitual criminal.

¶ 27     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28     Affirmed.