2023 IL App (1st) 220255-U

No. 1-22-0255

Order filed June 14, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 6740 |
| | ) | |
| LEE WHITAKER, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for being an armed habitual criminal is affirmed where the evidence established that he had constructive possession of a rifle; case remanded for defendant to file a motion to correct his written sentencing order.

¶ 2    Following a bench trial, defendant Lee Whitaker was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2018)) and sentenced to seven years' imprisonment. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to prove he had constructive possession of a rifle recovered from a bedroom

closet. Defendant also asks this court to remand his case to the trial court pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019) to correct a clerical error on his written sentencing order. For the reasons stated below, we affirm and remand with directions.

¶ 3     Defendant was charged with one count of being an armed habitual criminal and two counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2018)). One count of UUWF alleged defendant possessed a firearm (Count II) and the other count alleged he possessed firearm ammunition (Count III).

¶ 4     At trial, Chicago police officer Paul Kirner testified that about 9:35 a.m. on April 29, 2019, he was working with a team of officers that executed a search warrant for a specific apartment in the 139th block of Clark Street in Riverdale. Defendant was the named target of the search warrant. Immediately prior to serving the warrant, Kirner and other officers conducted surveillance of the apartment. Kirner observed defendant exit the apartment building with a garbage can, empty the can in the back of the apartment complex, and reenter the apartment. About 15 minutes later, defendant again exited the apartment building and walked into the courtyard of the complex. Other officers then detained defendant and served him with the search warrant.

¶ 5     After defendant was detained, Officer Damen Balesteri gave Kirner a set of two keys recovered from defendant. Kirner went to the subject apartment while Officers George Spacek, Tim Moran, and Alex Cotton remained outside with defendant. The apartment door was locked. Kirner unlocked the door with a key recovered from defendant. Kirner knocked on the door, announced "police, search warrant," and opened the door slightly. During his investigation prior to the search, Kirner learned defendant lived in the apartment with his girlfriend, Nuita Mackey. Defendant called to Mackey by name, and she met him at the door.

¶ 6    Kirner showed Mackey the search warrant and told her it was for defendant. Mackey acknowledged defendant was her boyfriend. Kirner showed Mackey that the warrant indicated they were searching for a specific type of weapon. Mackey never told Kirner she owned a weapon or that there was a weapon inside the apartment. While Kirner spoke with Mackey, Officers Spacek and Cotton brought defendant inside the apartment and entered the only bedroom. Moments later, Spacek and Cotton informed Kirner that there was a rifle in the bedroom. Kirner entered the bedroom and observed a rifle lying atop some clothing inside a closet. Kirner did not recall if the clothing was for men or women. Officer Moran photographed and recovered the rifle.

¶ 7    Defendant was arrested and transported to the police station. After being advised of his *Miranda* rights, defendant spoke with Kirner and FBI Special Agent John Schaffer. Defendant told Kirner that a month earlier, his cousin asked him to help clean out an abandoned house around 115th Street. Defendant said his "girlfriend," Mackey, went with him and his cousin to the house. While cleaning the house, they found two rifles and a shotgun. The shotgun and one of the rifles were rusted, so defendant left those firearms there. Defendant took the sawed-off rifle. Defendant told Kirner he last touched the sawed-off rifle about one week prior to the police search.

¶ 8    On cross-examination, Kirner acknowledged the apartment was leased to Mackey and that the address on defendant's identification card was not for the apartment. Defendant told Kirner during the police interview that he stayed at the apartment, "but from time to time he's in and out." Defendant said Mackey was his "girlfriend" and they had been together for three years. When Kirner showed Mackey the warrant, he specifically asked her if there were any guns in the apartment and she said, "no." The warrant specified police were looking for a sawed-off rifle and

drugs. No drugs were recovered. Defendant never told police Mackey took the rifle from the abandoned house.

¶ 9    Chicago police officer George Spacek testified that he was one of the officers who detained defendant outside the apartment building. The officers told defendant they were executing a search warrant. They recovered a set of keys from defendant and approached the front door of his apartment. Defendant then told the officers he had a rifle inside a bedroom closet. Defendant led the officers to a closet in the only bedroom inside the apartment. Spacek observed a firearm in plain view lying on top of some clothes inside the closet. He did not notice if the clothing was for men or women. In court, Spacek identified two photographs of a rifle lying atop a pile of clothing as accurate representations of the firearm he observed in the closet, which was recovered by police.

¶ 10    On cross-examination, Spacek testified that defendant's exact words to police were "there was a gun" in the bedroom rather than "he had a gun." Spacek acknowledged the apartment belonged to Mackey.

¶ 11    Chicago police officer Timothy Moran testified substantially the same as Spacek that he was one of the officers who detained defendant, informed defendant of the search warrant, and recovered keys from defendant which Kirner used to open the front door. Moran further testified that he photographed and recovered a rifle from a bedroom closet. In the same bedroom, Moran also photographed and recovered a clear plastic knotted bag that contained several rounds of ammunition. In court, Moran identified two photographs he took of the rifle he recovered from the bedroom closet and one photograph of a bag of ammunition sitting atop a pack of cigarettes. Moran testified that the clothing depicted in the photographs appeared to be men's clothing. The ammunition was of the same caliber as the rifle.

¶ 12    The State presented a stipulation that defendant had prior convictions for UUWF and burglary.

¶ 13    Nuita Mackey testified for the defense that she lived at the subject address and was the only person named on the lease. Mackey lived alone in her apartment. Defendant did not live with her. Mackey identified defendant as "a friend." She denied they were in a dating relationship. Defendant was at her apartment when the police arrived. The police told Mackey they had a warrant to search for guns and drugs. Mackey had a rifle in her bedroom closet. She testified that she frequently worked for a friend's cleaning service and found the gun while cleaning a vacant house. She brought the gun home and put it in her closet. Mackey denied that defendant was with her when she found the gun and denied the gun belonged to defendant. She did not tell the police the gun was hers because she was afraid since she had not purchased the gun. Mackey planned to turn in the gun to the police when they held their next "buy back" day where they give people $100 in exchange for a gun.

¶ 14    On cross-examination, Mackey testified that she had known defendant for about five years. They never dated and he never stayed overnight at her apartment. He did not have any clothes or personal property at her home. Defendant came to Mackey's apartment multiple times each week. Mackey paid defendant to do errands for her such as taking out the garbage and going to the store. Defendant had the keys to her apartment because he had gone to the store for her. Mackey never saw defendant with the firearm. She did not know if defendant knew where the firearm was in her apartment. Mackey claimed that after defendant was charged with possessing the firearm, she told an investigator for the defense that the firearm was hers. The investigator called her to discuss the incident. She did not know whom she spoke with. She also told the police it was her gun when she

tried to get her keys back from them. The keys the police recovered from defendant were the only keys Mackey had for her apartment.

¶ 15    The trial court found defendant guilty of count I for being an armed habitual criminal and count II for UUWF for possession of the rifle. The court stated that the issue in the case was whether defendant had constructive possession of the rifle. The court found that, although Mackey was clearly the leaseholder, the police observed defendant entering and exiting the apartment and he had keys to the apartment, which showed he had "access to" and "some control over" the apartment. The court pointed out that when the police informed defendant that they had a search warrant for a specific firearm, defendant was "candid" with them and "immediately" led the officers to the rifle in the bedroom. Conversely, when Kirner showed Mackey the search warrant, she said nothing, did nothing, and "importantly," did not direct police to the weapon or take ownership of it. The court summarized defendant's statement to police, noting that he stated he last touched the rifle a week before the search.

¶ 16    The trial court noted that there was no testimony that defendant claimed he owned the bag of bullets recovered from the bedroom. Consequently, the court found defendant not guilty of count III, which charged him with UUWF for possession of ammunition.

¶ 17    At sentencing, the trial court merged counts II and III with count I and sentenced defendant to seven years' imprisonment. Shortly thereafter, the court recalled the case and noted it erred when it merged count III into count I because it had found defendant not guilty of count III. The court clarified that only count II merged into count I.

¶ 18    On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt because it failed to prove he had constructive possession of the rifle recovered from the

bedroom closet. Defendant concedes the State proved he had preexisting knowledge of the presence of the rifle, but argues it failed to prove he had immediate and exclusive control of the premises, specifically, the bedroom closet. Defendant asserts that the evidence showed Mackey was the sole leaseholder and lived in the apartment alone. He argues that he did not live or stay overnight at Mackey's apartment, he was not Mackey's boyfriend, and Mackey credibly testified that the rifle belonged exclusively to her. Defendant argues that his inculpatory statement to police should be discounted, especially because it conflicts with Mackey's "highly credible" testimony.

¶ 19    When a defendant claims the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). This court will not retry the defendant. *People v. Jones*, 2023 IL 127810, ¶ 28. On review, we must draw all reasonable inferences from the evidence in favor of the State. *Id.*

¶ 20    In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences from therein. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In weighing the evidence, the fact finder is not required to disregard the inferences that naturally flow from that evidence, nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Jackson*, 232 Ill. 2d at 281. We will not reverse a criminal conviction based upon

insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to the defendant's guilt. *Jones*, 2023 IL 127810, ¶ 28.

¶ 21    To prove defendant guilty of being an armed habitual criminal as charged in this case, the State was required to show that he knowingly or intentionally possessed a firearm after having been previously convicted of UUWF and burglary. 720 ILCS 5/24-1.7(a) (West 2018). Defendant does not challenge the proof of his prior convictions, to which he stipulated at trial.

¶ 22    Possession of a firearm may be either actual or constructive. *Jones*, 2023 IL 127810, ¶ 30. Where, as here, defendant is not found in actual physical possession of the firearm, the State must prove he had constructive possession. *Id.* Constructive possession exists where defendant had knowledge of the presence of the firearm and exercised immediate and exclusive control over the location where the weapon was found. *Id.* Knowledge may be demonstrated by evidence of defendant's declarations, acts, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 23    Control is established when defendant has the capability and intent to maintain dominion and control over the firearm, even if he lacks personal present dominion over it. *Id*. (citing *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). Proof that defendant had control over the location where the firearm was found gives rise to an inference of his knowledge and possession of that weapon. *Jones*, 2023 IL 127810, ¶ 30. "The law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband." (Internal quotation marks omitted.) *People v. Givens*, 237 Ill. 2d 311, 338 (2010).

¶ 24    Constructive possession may be inferred from the evidence by the trier of fact and is often established by entirely circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). The fact finder is entitled to rely on reasonable inferences of knowledge and possession, absent other factors that might raise a reasonable doubt of defendant's guilt. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Defendant's habitation in the premises where contraband is found is sufficient evidence of his control of the location to establish constructive possession. *Id.* The testimony of a single witness is sufficient to sustain a conviction where it is positive and credible, even when it is contradicted by defendant. *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 25    Here, in the light most favorable to the State, the record shows the evidence was sufficient for the trial court to find that defendant had constructive possession of the rifle recovered from the bedroom closet. Defendant concedes the State proved he had knowledge of the presence of the rifle. He argues, however, that the State failed to prove he had immediate and exclusive control of the premises, specifically, the bedroom closet. We disagree. The evidence showed that Kirner observed defendant exit the apartment building with a garbage can, empty the can in the back of the apartment complex, and reenter the apartment. About 15 minutes later, defendant again exited the apartment building and entered the courtyard of the complex where police detained him and served him with the search warrant. Police recovered a set of two keys from defendant which Kirner used to unlock the apartment door. This evidence showed that, although Mackey was the leaseholder, defendant had keys and the ability to enter and exit the apartment, giving him immediate access to and control over the apartment. *Jones*, 2023 IL 127810, ¶ 30.

¶ 26    The evidence further showed that defendant made several statements to the police which demonstrated his access to and control over the closet where the rifle was found. After the police

recovered the keys from defendant and approached the apartment door, defendant told the officers there was a rifle inside a bedroom closet. Spacek testified that defendant led the officers to a closet in the only bedroom inside the apartment. Spacek, Kirner, and Moran all observed the rifle lying atop a pile of clothing inside the closet. Defendant told Kirner that he found the sawed-off rifle a month earlier while cleaning an abandoned house. Defendant stated that he took the rifle but decided to leave two other firearms there because they were rusted. Defendant also told Kirner that he last touched the rifle one week prior to the search. Defendant's statements showed the rifle belonged to him, he had recently handled it, and he knew exactly where it was located. Defendant's statements thereby established that he had the capability and intent to maintain immediate and exclusive control over the rifle in the bedroom closet. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Consequently, the trial court was able to reasonably infer that defendant had constructive possession of the firearm. *Id.* The fact that Mackey also could have accessed the rifle did not diminish defendant's control or constructive possession of the weapon. *Givens*, 237 Ill. 2d at 338.

¶ 27    In reaching this conclusion, we find no merit in defendant's argument that Mackey's testimony was more credible than the cumulative evidence presented by the State. Mackey's testimony that defendant was not her boyfriend and did not stay overnight in her apartment was expressly contradicted by Kirner's testimony that Mackey acknowledged defendant was her boyfriend when Kirner showed her the search warrant. Kirner further testified that defendant told him Mackey had been his girlfriend for three years and that he stayed at the apartment, "but from time to time he's in and out." Moreover, defendant's inculpatory statement to police directly contradicted Mackey's testimony that she took the rifle from a house she was cleaning, and that the firearm belonged to her.

¶ 28    As the trier of fact, it was the trial court's responsibility to determine the credibility of the witnesses' testimony, weigh all the evidence, and draw reasonable inferences from therein. *Siguenza-Brito*, 235 Ill. 2d at 228. The trial court found that defendant was "candid" with the police when he led them to the rifle, whereas Mackey said nothing when Kirner told her they were searching for weapons. The court apparently found the State's evidence, including defendant's statement, more credible than Mackey's testimony. Based on this record, we find no reason to disturb the trial court's determination.

¶ 29    Nor are we persuaded by defendant's argument that the evidence was insufficient because there was no testimony that his fingerprints were found on the rifle. "Proof of physical evidence connecting a defendant to a crime has never been required to establish guilt." *People v. Williams*, 182 Ill. 2d 171, 192 (1998). It is well settled that where a witness's testimony is credible, the State is not required to present additional physical or forensic evidence that links a defendant to a firearm. *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 33.

¶ 30    We conclude that the evidence was sufficient for the trial court to find that defendant had constructive possession of the rifle recovered from the bedroom closet, and therefore, that the State proved defendant guilty beyond a reasonable doubt of being an armed habitual criminal.

¶ 31    Defendant next asks this court to remand his case to the trial court pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019) to allow him to file a motion to correct a clerical error on his written sentencing order. Defendant's sentencing order erroneously indicates that Counts II and III, which were the UUWF charges, both merged into Count I. As discussed above, after realizing the error, the trial court recalled defendant's case and clarified that only Count II

merged into Count I as it had found defendant not guilty of Count III. Unfortunately, the written sentencing order was not corrected.

¶ 32    Rule 472 provides that, in criminal cases, the trial court retains jurisdiction to correct clerical errors in the written sentencing order that result in a discrepancy between the record and the actual judgment of the court. Ill. S. Ct. R. 472(a)(4). Defendant may file a motion to correct the error in the circuit court at any time. R. 472(a). In this case, appellate counsel discovered the error and raised it here by requesting a remand, noting that this court lacks jurisdiction to consider the claim because it was never raised before the trial court. See *People v. Edwards*, 2020 IL App (1st) 170843, ¶ 27.

¶ 33    Rule 472(e) states as follows:

"In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule."

¶ 34    In accordance with Rule 472(e), we remand this case to the circuit court for the sole purpose of allowing defendant to file a motion to correct the clerical error on his written sentencing order pursuant to Rule 472(a)(4).

¶ 35    For these reasons we affirm the judgment of the circuit court of Cook County and remand the case to allow defendant to file a motion to correct his written sentencing order.

¶ 36    Affirmed; remanded with directions.